STANDARD SAVINGS & LOAN ASS'N v. FITTS et ux. (No. 3800.)

Court of Civil Appeals of Texas. Texarkana. Feb. 1, 1930.

Rehearing Denied Feb. 13, 1930.

T. D. Starnes, of Greenville, for appellant.
T. F. Ragsdale and D. W. Huffer, both of Greenville, for appellees.

LEVY, J.  The suit was by the appellant against the appellees, Louis Fitts and his wife, Emma Fitts, in trespass to try title to a lot in block 16 of Moulton's addition to the city of Greenville. The defendants, setting up the facts, claimed that the plaintiff had notice at the time it acquired an interest in the lot that the lot was the homestead of the defendants, and a simulated conveyance was made with outstanding notes so that they could borrow money to pay off a note held for collection which had been given in part payment of an automobile truck. In a trial before the court without a jury, judgment was entered in favor of the defendants.

The court made the following findings of fact and conclusions of law, namely:

### Findings of Fact.

"1. I find that the defendants, Louis Fitts and wife, Emma Fitts, acquired the lot described in plaintiff's petition in 1911, and that it was their homestead," etc.

"2. That Louis Fitts on April 14th, 1922, was indebted by note to Brooks and Neville for an automobile truck, and that said Brooks and Neville were threatening foreclosure proceedings upon the truck.

"3. That Louis Fitts and wife, Emma Fitts, on April 14th, 1922, by general warranty deed, conveyed the homestead to S. B. Brooks, the consideration recited in said deed being Seventeen Hundred Fifty Dollars ($1,750.00) and a vendor's lien note for the sum of One Thousand Dollars ($1,000) ; that the deed and note were sufficient on their face to create a valid lien on the lot; that said conveyance was simulated and was made for the purpose of creating an apparent lien on the homestead, so that Fitts could borrow thereon money with which to discharge the truck note owing by him to Brooks and Neville; that Fitts knew, and was fully informed by Brooks, that he (Fitts) could not procure a loan against the homestead; but if he and his wife would deed him (Brooks) the place and take his (Brooks) note for One Thousand Dollars ($1,000.00), that he (Brooks) would use the note as a basis for procuring a loan and when such loan was procured would reconvey the property ; and it was in pursuance of this agreement and understanding that the conveyance was made; that the deed from Fitts and wife to Brooks was filed for record and recorded on May 5th, 1922.

"4. That the Standard Savings & Loan Association purchased the One Thousand Dollar ($1,000.00) vendor's lien note recited in the deed from Fitts and wife to Brooks, before maturity and for value, and was an innocent purchaser thereof and without notice of the fictitious character of the conveyance, unless the knowledge of its agent, A. R. Holmes, should be imputed to it.

"5. That A. R. Holmes was the agent of the Standard Savings & Loan Association, at Greenville, to the extent of soliciting loans and submitting applications for same to the company for approval, but was without authority to close loans until the Board of Directors of the Company had approved the applications; that Holmes, the agent of the Company, knew that the conveyance to Brooks by Fitts and wife was simulated and was made for the fraudulent purpose of creating an apparent lien and procuring thereon a loan against the homestead, and that he withheld such knowledge from his principal, the plaintiff, Standard Savings & Loan Association, and against its positive instruction not to take or submit an application for a loan where there was a suspicion of homestead evasion; that prior to the execution of the deed by Fitts and wife to Brooks he (Holmes) explained to the defendant, Emma Fitts, that the purpose of executing the deed was to create an apparent lien and procure thereon a loan against the homestead sufficient to pay her husband's truck note and that Brooks would reconvey the property as soon as the loan was procured.

"6. That on May 5th, 1922, S. B. Brooks and wife executed a deed of trust in favor of the Standard Savings & Loan Association against the property to secure it in the payment of a note for One Thousand Dollars ($1,000.00), which was in renewal and extension of the One Thousand Dollar ($1,000) vendor's line note described in the deed from Fitts and wife to Brooks, which had been assigned to it by Fitts; S. B. Brooks was at that time solvent, and his note for $1,000 was good for that amount. That on the 16th day of July, 1925, Brooks and wife reconveyed the property to Louis Fitts, reciting in the deed a consideration of Fifteen Hundred Dollars ($1,500.00) cash and a vendor's lien note for One Thousand Dollars ($1,000.00) payable to S. B. Brooks sixty days from date, which note was duly assigned by Brooks to the Standard Savings & Loan Association and which in part, together with an unpaid balance of Six Hundred Sixty-eight ($668.00) of the One Thousand Dollars ($1,000.00) vendor's lien note recited in the deed from Fitts and wife to Brooks, was renewed and extended in a deed of trust executed by Fitts and wife on the 14th day of August, 1925, in favor of the plaintiff, The Standard Savings & Loan Association, against the property in question.

"7. That Fitts defaulted in the payment of the indebtedness described in the deed of trust last mentioned, and the property described therein was, after due advertisement and in accordance with the terms of said deed of trust, on the 3rd day of April, 1928, sold at

public vendue by the Trustee, and was purchased by the plaintiff, Standard Savings & Loan Association (for a consideration of $920.-81), to whom the Trustee executed a deed of conveyance on the 21st day of April, 1928, and which was duly filed and recorded in the Deed Records of Hunt County, Texas, on the 23rd day of April, 1928.

### "Conclusions of Law.

"I conclude as a matter of law that plaintiff's lien was invalid and the sale thereunder was void; that the trustee's deed conveyed no title, and that the same should be cancelled; and that the defendants should recover the title to the property in controversy."

 There is no complaint made of the facts found by the court, and such findings become conclusive and final. The complaint on appeal is that the court erred in the conclusion of law, as the legal effect attaching to the facts, that the defendants, instead of the plaintiff, was entitled to a judgment in their favor. It is believed that the trial court correctly decided the case. The sole question arising in the facts is that, as stated by the court of whether or not "the knowledge of the agent should be imputed" to the appellant. As set forth by the court in finding No. 5 (1) "the agent of the company knew that the conveyance to Brooks by Fitts and his wife was simulated and was made for the fraudulent purpose of creating an apparent lien and procuring thereon a loan against the homestead," but (2) the agent "withheld such knowledge from his principal" and acted "against its positive instruction not to take or submit an application for a loan where there was a suspicion of homestead evasion."

The authority of the agent was, as found, that "of soliciting loans and submitting applications for same to the company for approval, but he was without authority to close loans until the board of directors of the company had approved the application." It is a well-settled general rule that notice to an agent in the course of his employment and in relation to a matter within the scope of his actual or apparent authority is notice to his principal, whether the agent communicates his knowledge to the principal or not. 2 Tex. Jur. § 158, p. 563; 2 C. J. p. 859, § 542. This rule applies even though the acts of the agent may be in violation of private instructions received from the principal. 2 Tex. Jur. § 43, p. 431. Therefore this general rule that the principal is bound by the knowledge of his agent is applicable to and governs this case, as seemingly so held by the trial court, unless there was collusion between the agent and the appellees. As conceded, the rule that the principal is chargeable with what the agent knows does not apply if the third person and the agent colluded to defraud the principal. 2 C. J. p. 871.

The trial court does not expressly find that factual element that appellees knowingly colluded with the agent of the appellant for the purpose of perpetrating a fraud upon the appellant. The court's application of the general rule above to the facts of the instant case would negative any intention to infer collusion between the appellees and the agent. The trial court does find that the agent explained to the wife "that the purpose of executing the deed was to create an apparent lien and procure thereon a loan against the homestead sufficient to pay her husband's truck note, and that Brooks would reconvey the property as soon as the loan was procured." The trial court had the right to regard, as he evidently did, this act of the agent as a fact not showing fraudulent design or intent on the part of the wife, but as showing only that she understood that her signing the deed was not to affect the title to her home. As observed by the court in the case of Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301, 304, "It is difficult to attach the term 'fraudulent' to her passive submission in the series of acts dictated and required to perfect the loan for the husband by the agent of the company."

The judgment is affirmed.