### McMURRAY et al. v. BROTHERHOOD OF RAILROAD TRAINMEN et al.

### No. 2454.

District Court, W. D. Pennsylvania.

Jan. 14, 1931.

Van A. Barrickman and Daniel S. Horne, both of Pittsburgh, Pa., for plaintiffs.

E. E. McMonigle and E. B. Strassburger, both of Pittsburgh, Pa., for defendants.

GIBSON, District Judge.

The defendants have moved to dismiss the amended bill of complaint, basing their motion upon the contention that it does not set forth a case within the equitable powers of the court.

The bill is quite long and somewhat confusing. It sets forth one side of a controversy between two subordinate lodges of the Brotherhood of Railroad Trainmen, which was heard before all the tribunals of the brotherhood, with varying results, but with plaintiffs' lodge finally losing before the brotherhood's board of appeals. The dispute was, and is, in respect to seniority rights upon a "run" upon the Pennsylvania Railroad between Pittsburgh and Dennison, Ohio. The run in question is one known as an interseniority district run, that is, one not wholly within one seniority district. By regulations established by mutual agreement between the Pennsylvania Railroad and the Brotherhood of Railroad Trainmen, trainmen are entitled, ability and fitness being equal, to promotion or choice of runs according to seniority in service. The railroad is divided into a number of seniority districts, and each trainman, as a general proposition, is possessed of seniority rights only within his own district. The exception to this rule is found in connection with interseniority district road runs. As to such runs, a regulation, adopted April 1, 1927, by the railroad management and the

Brotherhood of Railroad Trainmen and Order of Railroad Conductors, sets forth:

"3–C–1. (a) When inter-seniority district road runs are established, trainmen of the seniority districts over which such runs operate, will participate on the basis which the ratio of mileage in each seniority district bears to total mileage in such service."

Plaintiffs all reside within what is known among trainmen employed by the Panhandle Division of the Pennsylvania Railroad as the Carnegie Scully seniority district, and, 38 per cent. of the disputed run being within that district, under the regulation quoted, they claim seniority rights on the Dennison-Pittsburgh through run to the extent of 38 per cent., that is, that the Scully district employees should handle 38 per cent. of the through freight between Pittsburgh and Dennison.

The persons whose interests are in conflict with those of the plaintiffs, none of whom have been joined as defendants, are trainmen who are members of Local Lodge No. 421 of the Brotherhood of Railroad Trainmen located at Dennison, Ohio. The bill of complaint is quite discursive and does not set forth a clear and continuous history of the freight operations on the Panhandle Division between Pittsburgh and Dennison prior to 1922 or 1923. As we read it, however, the bill states that immediately prior to the years last mentioned a large part of the freight was relayed at Collier yard (the limit of the Scully seniority district), and the rest was carried by through trains operated by trainmen of the Dennison district. In 1922 or 1923, the superintendent of the division discontinued a number of "regular assigned freight service crews" between the Carnegie Scully District and Dennison, and by that action it is alleged the tonnage to be carried was "automatically diverted" to the Dennison East Pool, and the Carnegie-Scully trainmen were deprived of all the through runs between Pittsburgh and Dennison. Local Lodge No. 571, of which plaintiffs are members, protested to the Railroad Management in respect to this action of the Superintendent, and asked a reinstatement of the former arrangement. Objection having been made (the bill does not state by whom) to this request, the controversy "was referred to the trainmen themselves, in order to reach an adjustment of the conditions existing, the conclusion reached to be submitted to the management of said railroad for their concurrence." Pursuant to this reference, a committee of the Brotherhood of Trainmen, with a subcommittee of the Order of Railroad Conductors and the Enginemen and Firemen, considered the matter and reported against the contention of Lodge No. 571 (plaintiffs). That lodge appealed to the full general committee of the brotherhood, which sustained plaintiffs' contentions. The Dennison East Trainmen, Lodge No. 421, thereupon appealed to the board of directors of the brotherhood, which sustained the action of the general committee. From this decision a further appeal was taken to the board of appeals of the brotherhood, the court of last resort within the order. By the constitution of the brotherhood (attached to bill), it is provided: "Such decision (of Board of Appeals) shall be the final adjudication of any and all rights and questions included in the appeal." The board of appeals sustained the contention of the opponents of Lodge No. 571, to which plaintiffs belong, and reversed the decision of the general committee, in the following words:

"After careful consideration of all the evidence in the case, it was the opinion of the Board of Appeals that the action of the full general committee in apportioning thirty-eight (38%) per cent. of the work to the Scully District, under application of regulation 3–G–1, established retroactive seniority on through runs in operation before the inception of regulation 3–C–1. Therefore, the Board sustains the appeal."

From the decision of the board of appeals the plaintiffs are, in effect, appealing to this court. Apparently recognizing the rule to the effect that courts will not interfere with the internal operations of trades unions or like associations unless the aggrieved member has been deprived of a pecuniary right by irregular procedure within the association or by fraud, plaintiffs have declared that deprivation of their seniority rights constituted an unlawful taking of their property rights, and that the decision of the board of appeals "was the result of a corrupt, wilful, fraudulent and unlawful conspiracy between the members of Local Lodge No. 421 of the East Dennison District and the Board of Appeals of the Brotherhood of Railroad Trainmen to deprive the trainmen of the Carnegie Scully District, including the plaintiffs herein, of their seniority rights to serve as trainmen out of the said Carnegie Scully District in the operation of through trains on the Pan Handle Division * * * and to deprive them of their livelihood and to assure for the trainmen of Lodge No. 421 the runs secured to the trainmen of the Car-

negie Scully District on said Pan Handle Division of the Pennsylvania Railroad." The allegations as to deprivation of a property right and fraud were not in the original bill, but were inserted by amendment after motion to dismiss had been made. The bill of complaint prays this court to make an order setting aside the decision of the board of appeals, and to declare it null and void; also to enjoin the defendants from putting the order into operation.

As presented by the bill, the matter in dispute is one of interest only to members of the Brotherhood of Trainmen. The Pennsylvania Railroad, although the right to operate certain of its trains is in dispute, is declared to have no part in the controversy and consequently, it is stated, has not been joined as a party to the suit. Assuming the truth of this contention for the purpose of argument, and that the railroad is not an essential party herein, we have a dispute between members of the Brotherhood of Trainmen in respect to the scope of rights or privileges which came to them only through and from their order. Ordinarily, in such controversies the disputants are concluded by the final order of their association; the power which gave can take away. But, claim plaintiffs' counsel, the bill in the instant case presents an exception to the rule in that it alleges that the pecuniary rights of plaintiffs are involved, and that such rights have been taken away by fraud.

As to the charge of fraud, an examination of the bill will disclose that it is exceedingly vague, and sets forth a conclusion rather than fact. It alleges no fraud on the part of any of the defendants named, but asserts that the decision of the board of appeals was the "result" of a conspiracy between the board and Lodge No. 421, neither the lodge nor the members of the board being defendants herein. Even if they had been made defendants, the charge of fraud is insufficient.

As to the claim of pecuniary injury, it is at least doubtful whether the seniority rights which are based upon the joint agreement between the brotherhood and the Pennsylvania Railroad are property rights of such a nature as to justify the court in intervening in the internal operations of the brotherhood. The railroad and the brotherhood, by mutual consent, can vacate the seniority regulations at any time, and either party can withdraw from them after thirty days notice to the others. The right is, therefore, somewhat intangible.

Passing by, however, the questions as to the sufficiency of the charge of fraud and of the claim of deprivation of property rights, it seems plain to us that the bill of complaint must be dismissed by reason of its failure to include essential parties.

The plaintiffs base their claims to seniority rights upon the through runs between Dennison and Pittsburgh upon regulation 3–C–1, which was adopted by agreement between the railroad and the brotherhood. Where the scope and effect of that regulation is a subject of inquiry, it would seem that the railroad should be given the opportunity to be heard, and especially so in view of the fact that the personnel of its train crews is to be affected by the conclusion reached.

It may be that the railroad is not concerned in the subject-matter of the instant case, as stated in the bill of complaint, but the same statement certainly cannot be made in respect to the members of Local Lodge No. 421 of the Brotherhood of Trainmen. If the railroad is not interested, the members of that lodge are the only persons, other than plaintiffs, who are concerned in the decree in the instant matter. The present defendants certainly have no interest in the subject-matter of this action other than the possible desire to maintain the power of the board of appeals to make final decisions in controversies between members of the brotherhood, or between subordinate lodges. But the members of Lodge No. 421 have just the same claim of right, as appears from the bill, as have the plaintiffs. Such members, the bill discloses, have contested the claims of plaintiffs in every tribunal of the brotherhood, and have been ultimately successful therein, and they cannot properly be excluded from participation in an action which is, as heretofore stated, in effect an appeal from the final court of the brotherhood. Plaintiffs have claimed, and their suit is founded thereon, that seniority rights upon the through runs are property rights. If so, this court cannot well make a decree which will wipe out the claimed property rights of the members of Lodge No. 421 without giving them an opportunity to be heard. The Dennison trainmen are probably not resident within this district, and so cannot be made parties in the instant action. It seems quite possible that they, with the present defendants, could be joined in another district; but whether this be correct or not, they are essential parties, and a court of equity can properly make no effective order unless they be joined as de-

fendants. Ex parte Equitable Trust Co. (C. C. A.) 231 F. 571, 592; California v. S. Pac. Co., 157 U. S. 229, 15 S. Ct. 591, 39 L. Ed. 683.

The bill of complaint must be dismissed.