**BROTHERHOOD OF RAILROAD TRAIN-
MEN et al. v. PRICE et al.**

No. 10365.

Court of Civil Appeals of Texas.
Galveston.

April 29, 1937.

Rehearing Denied July 29, 1937.

Tom J. McGrath, of Cleveland, Ohio, and Charles Murphy, of Houston, for appellants.

J. L. Webb, of Houston (Bernard A. Golding, of Houston, of counsel), for appellees.

CODY, Justice.

This suit involves the power of a labor union to decide conflicting claims of its members to seniority rights on the only freight train that is operated over the tracks of the G. H. & H. Ry. Co., and which is operated by the I. & G. N. and M. K. & T. Railway Companies, in alternating years, under an arrangement between the three companies.

The facts necessary to an understanding of the case are unusual, if not unique. In 1895, the I. & G. N. and M. K. & T. Railway Companies acquired ownership of the entire stock of the G. H. & H., which line extends only from Galveston to Houston, in equal shares. Thereafter, and until the Government took over the operation of railways during the World War, the three companies operated as many trains as they pleased over the tracks of the G. H. & H., under an arrangement the details of which have no bearing on this case. On March 1, 1920, when the Government turned the railways back to private management, the management of the G. H. & H. advised its engine and train service employees that it would run no more freight or passenger trains, but that such business would be handled by its tenant lines, the I. & G. N. and M. K. & T. This resulted in a controversy between the engine and train service employees of the G. H. & H. and those of the I. & G. N. and M. K. & T., as to what disposition should be made of the G. H. & H. employees, and what their rights to perform service under the new arrangement should be. Finally, on November 18, 1920, after hearings were held, it was ruled by the heads of the four brotherhoods that the train service employees of the G. H. & H., inclusive of appellees, should have prior rights to man the local freight train which was then operated by the I. & G. N. and M. K. & T., in alternating years, between Galveston and Houston; and two of the appellees were placed on the roster of the employees of the I. & G. N., while the other two were placed on the roster of the M. K. & T., to begin to accumulate seniority rights, respectively, as of March 1, 1920. There was no thought at the time this ruling was made that the local freight train, to the manning of which appellees were given seniority or prior rights, would be canceled; though provision was made therein for seniority rights of the G. H. & H. employees in service connected with the Houston-Galveston run, should it be extended by the I. & G. N. or M. K. & T. However, in 1932, by reason of falling off of business, the I. & G. N. and M. K. & T. ordered the freight service between Houston and Galveston cut to one train a day, which should handle all through and local freight business. This brought on a new controversy between the old G. H. & H. men, appellees herein, and the train service employees of the I. & G. N. and M. K. & T., belonging to the subordinate lodges of the Brotherhood of Railroad Trainmen at Palestine and Smithville, respectively; that is, the employees who manned the through freight. The old G. H. & H. men claimed they were given, in the decision of November 18, 1920, the prior right to any exclusive service between Galveston and Houston; while the

employees on the other lines claimed the G. H. & H. men had only been given seniority rights in the local freight train (seniority rights accumulated from March 1, 1920, not being an issue), and that they lost such seniority rights when the local to which they were attached was canceled. This was finally settled, after hearings, by an order of the president of the defendant union, whereby the G. H. & H. men were awarded the right to man the train remaining in service, for 50 per cent. of the time, or half the year, and the employees of the other companies, the right to man the train, in alternating years, the remainder of the time. This ruling was made in December, 1934, and the union, for the purpose of carrying into effect its decision, requested of the management of the I. & G. N., whose year it was to operate the train in 1935, to man the train with I. & G. N. employees, and the management of the I. & G. N. took proper steps to so man the train beginning with February 1, 1935. The G. H. & H. employees filed their suit for temporary injunction against the Brotherhood of Railroad Trainmen, its general chairman at Denison, its general chairman at Palestine, its president, and a trainmaster of the I. & G. N. at Palestine, to prevent carrying such order into effect; and for the injunction to be made permanent on final hearing. The trial court granted the temporary injunction, and after a hearing made it permanent.

The union or brotherhood, and its two general chairmen of Denison and Palestine, respectively, appeal. The employees of the I. & G. N. and M. K. & T., whose seniority rights are alleged to be in conflict with those of appellees, were not joined as defendants, and are not before the court.

If, as claimed by appellees, seniority rights on the freight train in question are property rights, rights that a court of equity will protect against threatened injury by an injunction, how can a court of equity, without having before it the train service employees whose claim to such property rights conflicts with that of appellees, make a decree which, if it awards such rights to appellees, will wipe out the conflicting claim of the train service employees of the other companies? It is obvious that the employees, who are claiming the seniority rights on the freight train in question in opposition to the claim of appellees, are necessary parties, and that no effective decree awarding such rights could be made without them being joined as defendants. Neither the union nor its officers had any pecuniary interest or property rights involved. McMurray v. Brotherhood of Railroad Trainmen (D.C.) 50 F.(2d) 968; Id. (C.C.A.) 54 F.(2d) 923; California v. So. Pac. Company, 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed. 683. So, if the trial court had jurisdiction over the controversy at all, it erred in proceeding to award final judgment without having before it the parties necessary to an effective decree.

In making their ruling on the controversy before them, on November 18, 1920, the heads of the brotherhoods were acting in connection with the internal management of their respective unions. And so of the action later by the president of the Brotherhood of Railroad Trainmen in December of 1934. Courts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the courts may exercise the power of interpretation and administration reserved to the governing bodies of such organizations would plainly subvert their contractual right to exercise such power of interpretation and administration. So long as such governing bodies do not substitute legislation for interpretation, do not transgress the bounds of reason, common sense, fairness, do not contravene public policy, or the laws of the land in such interpretation and administration, the courts cannot interfere. Shaup v. Brotherhood, etc., 223 Ala. 202, 135 So. 327. Without such latitude of action, associations organized to promote the legitimate welfare of its members would be deprived of power to do so.

Appellees allege that they base their seniority rights to man the train in question on the constitution, laws, and policies of their union, and on the ruling of November 18, 1920, as interpreted shortly thereafter by those who made it. That ruling had the effect of taking from the employees of the I. & G. N. and M. K. & T. work they would otherwise have had, and giving it to the appellees when they were thrown out of employment when the G. H. & H. ceased running commercial trains. Such ruling resulted from the application by the govern-

ing bodies of the unions of their policies to the changed situation that resulted from the G. H. & H. ceasing to run commercial trains. If the ruling contains broader language than the occasion required, then its writer merely proved that the use of obiter dicta is not the exclusive vice of judges. That ruling created no rights in appellees, at least the pleading fails to exhibit any, that destroyed the power of the appropriate governing body of the Brotherhood of Railroad Trainmen from, in December, 1934, applying its policy appropriate to the situation that resulted from the reduction of the freight service over the tracks of the G. H. & H., between Galveston and Houston, to one train a day.

We do not mean to hold that seniority rights may not be shown to be property rights, and of the nature that a court of equity, under proper allegations, may protect, but the allegations of the petition before us make out no such case. The allegations of a petition for an injunction must be of facts, and not of conclusions either of law or fact. The judgment of the court awarding an injunction should be set aside, the injunction dissolved, and the cause remanded to afford appellees the opportunity to amend. It is so ordered.

Reversed and remanded.

GRAVES, Justice (concurring).

I acquiesce—at least pending the fuller light of an expected rehearing—in the remand of the cause, on the holding that all necessary parties were not before the court.

On Motion for Rehearing.

CODY, Justice.

 In our former opinion the majority of the court conceived that we accepted the facts found by the trial court, but drew therefrom legal conclusions different from those drawn by him. To the majority it is clear that the decision of November 18, 1920, is a decision of a dispute and not a contract. As we stated: "If the ruling contains broader language than the occasion required, then its writer merely proved that the use of obiter dicta was not the exclusive vice of judges." A decision broader than an occasion requires is not a judicial, but is a legislative, action. Prof. Maitland, in his work Canon Law, said—he was referring to time antecedent to the Reformation—that the important part of the decision of a case at canon law was the obiter dicta stated therein, for the tribunal had the power to

legislate. And the want of power of courts at common law to make their obiter dicta binding—their want of legislative power— he stated to be the fundamental difference in their power from that of the power of the tribunal administering canon law. If under the guise of deciding a dispute, of exercising their judicial power, the governing body of a voluntary association could substitute legislation for interpretation of the laws of their society as applied to facts before them for decision, they thereby could confer away rights of the society or of members, which it was never contemplated should be in their power to do. And in this connection we again quote from our former opinion: "So long as such governing bodies do not substitute legislation for interpretation, do not transgress the bounds of reason, common sense, fairness, do not contravene public policy, or the laws of the land in such interpretation and administration, the courts cannot interfere." And there is no reason to suppose that in the decision of November 18, 1920, there was any such intention. Nor do we think that their intention should be subverted by calling their decision a contract.

 There are at most but four positions on the train involved in this suit, the exclusive right to fill which appellees are claiming in this action. If appellees are awarded such exclusive right, the necessary result will be to exclude the train service employees of the I. & G. N. and M. K. & T., who were awarded the right to fill such positions for 50 per cent. of the time by President Whitney of defendant union, from the performance of any service on the train in question. Such train service employees are therefore indispensable parties to this suit. The principle underlying all administration of justice is this, that no proceedings shall take place in court affecting the rights of anyone without affording him an opportunity to be heard. When such a defect occurs, it presents fundamental error which the parties litigant cannot waive, and which the court must take cognizance sua sponte at any stage of the proceedings and correct, not for the benefit of the parties to the action, but for the benefit of the parties whose interest will be injuriously affected, and who are not before the court. The rights of such parties cannot be waived by the parties litigant, and should the attempt be made to do so, the court must not permit it, by refusing to proceed to judgment. Needham v. Cooney (Tex.Civ. App.) 173 S.W. 979, writ of error refused.

 We do not understand that appellees contest the principle in support of which we have cited Needham v. Cooney as authority, nor that they seriously contend that the train service employees of the I. & G. N. and M. K. & T., who would be excluded from employment in manning the train if appellees are successful in establishing in themselves an exclusive right to man it, are not indispensable parties to this suit. But we understand their contention mainly to be that such train service employees of the I. & G. N. and M. K. & T. are, under the doctrine of virtual representation, parties to this suit, in .virtue of the fact that service was had on the president and on two general chairmen of defendant union; and especially do they urge this to be true on the ground, as stated in their motion for rehearing, that the employees of the I. & G. N. and M. K. & T., who would have to be made parties, as having the right under the president's award to fill such four positions for six months in the year, are in excess of one hundred and fifty, and so cannot in reason be brought before the court. But there are insurmountable obstacles to applying the doctrine of representation so as to hold that the employees of the I. & G. N. and M. K. & T. are constructively before the court in this action. In the first place, and in regard to the contention that such employees form a class too numerous to be brought before the court, there are no allegations to this effect in the pleadings.

As stated in Corpus Juris, vol. 21, p. 287: "Where a suit is brought by or against a few persons in a representative capacity, that fact must be alleged of record, so as to present to the court the question whether sufficient parties are before the court properly to represent the rights of all, and in the absence of such an averment the rights of the other members of the class sought to be represented will not be affected by the proceedings."

It is not enough to advise the court for the first time in a motion for rehearing that the suit is a class suit, and that all the members of the class not actually before the court are so constructively, because certain members are actually so. Such information has the status of information dehors the record.

 But aside from this, as appears from our former opinion, the parties that are before the court have no pecuniary interest in manning the train in question. They have no such interest in the subject-matter of the litigation as to place them in the same class wih reference to the right to man the train, as do the train service employees of the I. & G. N. and M. K. & T. Their presence in court cannot, therefore, under the doctrine of representation, have the effect of bringing such employees constructively before the court. This appears from McMurray v. B. R. T., cited in our former opinion.

Motion for rehearing is overruled.

GRAVES, J., dissents.

GRAVES, Justice (dissenting on rehearing).

Upon final trial on the facts, in response to their application therefor, the trial court, sitting without a jury, granted the appellees, that is, W. L. Price, P. H. Waters, F. A. Llewellyn, and R. H. Martin, all as members in good standing of appellant order—except that Llewellyn had been forced to drop his membership therein about the year 1931—a permanent injunction, mandatory in character, against appellant Brotherhood of Railroad Trainmen, an unincorporated voluntary association for labor union purposes, within the purview of R.S. art. 6133, restraining it, its officers, and others, from impairing, or doing anything looking toward the abrogation of, certain seniority and prior rights found by the court to have inured to the appellees from agreements made between them and the brotherhood in 1920 as trainmen over the G. H. & H. trackage between Houston and Galveston; in doing so, the court found that, under the agreement of 1920 of date March 1st, as well as under a letter and subsequent agreement further interpretative thereof, the latter agreement dated November 18, 1920, the letter dated January 28, 1921, the seniority rights so awarded them had inured to the appellees as the sole survivors of the G. H. & H. Railway Company employees of 1920, when the agreement between such employees and the brotherhood had been first made, and that subsequent thereto, through various purported adjustments and revisions of such original contract of 1920, the appellant order had undertaken to abrogate that contract, thereby undermining the rights that had so come down from it to the appellees. It further found that the appellees had duly exhausted their remedies within the order before resorting to the court, that they were at the date of the judgment over forty-five years of age, hence ineligible to a

244

restoration of such rights if then taken from them, and that they were not bound by any of the subsequent proceedings taken by the brotherhood looking to the denial to appellees of their seniority privileges emanating from these 1920 agreements between the parties.

In its judgment so awarding the injunctive relief, the learned trial court embodied specific findings of both fact and law, which, in substance, are hereto appended [at end of this opinion], therein giving the appellants the option of requesting additional findings, which they did not avail themselves of.

By special order, the originals of all the material documents in evidence below have been sent up as part of the record, which is quite voluminous; but this member of the court fails to find anywhere in the extended assignments, briefs, or arguments of the appellants any attack upon the fact findings of the court below; they must therefore, under well-settled authorities, be received here as reflecting the established facts. International-Great Northern Ry. Co. v. Singer Iron & Steel Co. (Tex.Civ.App.) 96 S.W.(2d) 1003; Standard Sav. & Loan Asso. v. Fitts (Tex.Civ.App.) 24 S.W.(2d) 507.

In any event, however, an independent examination of the statement of facts, inclusive of such documents, fails to show any lack of support for the findings made below.

In view of this situation, since the cause in its controlling features is dependent upon just what the contracts and relations between the parties actually were, it would seem that little is left for review; since, further, the quoted findings go so comprehensively into this factual basis for the award finally made, it would obviously be a work of supererrogation to undertake adding anything thereto.

The appellees assail all of appellants' assignments and propositions as not being in conformity to the statutes and rules, especially R.S. art. 1844, and rules 23 to 31, inclusive, citing many cases as being interpretative of such procedural requirements; since this is a mere individual dissent, it would perhaps accomplish little or nothing to further comment thereon, but the opinion is here ventured that these objections are good, and that the complained of presentments do not merit consideration at this court's hands; were they considered, how-

ever, it is further thought none of them should be sustained.

Among the main contentions they essay to make are these:

(1) That the appellees, not having exhausted their available remedies in the appellant order, were not in position to seek such redress as this injunction gave them in the courts.

(2) That they were bound by the appellants' subsequent revisions and interpretations of the 1920 agreement relied upon; hence were no longer eligible to claim any right as still existing under those agreements.

(3) That, pursuant to the November 18, 1920, agreement and the interpretative instrument of January 28, 1921, the other three brotherhoods than the appellant were also necessary parties to this suit.

The first of these is conclusively answered not only by the trial court's unattacked finding the other way on the facts, but also by the legal rule that, having done all they reasonably could toward exhausting the remedies provided by the brotherhood itself and been advised by its governing authorities that all such efforts would be fruitless, and that the seniority claimed would be abrogated anyway, right of access to the courts matured. McCantz v. Brotherhood (Tex.Civ.App.) 13 S.W.(2d) 902, and cited authorities.

The second of these may not be upheld, for the reason thus succinctly stated by the Kentucky court in the similar case of Piercy v. L. & N. R. Co., 198 Ky. 477, 248 S.W. 1042, 1045, 33 A.L.R. 322: "But it is argued by appellants that Stanfill, who was a member of the Order of Railroad Conductors, as a loyal member of that organization must be bound by its action in requesting the railroad company to make the order changing the assignments. This contention ignores the fact that such agreements between organizations of employees and their employer are designed primarily for the individual benefit of the members of the organization, and not to place it within the power of the organization to change or modify the contract at its pleasure, so as to affect the individual rights of its members theretofore secured by the agreement."

In this instance, as the learned trial court found on sufficient evidence and properly concluded as a matter of law, the seniority privileges granted under the documents declared upon herein and undisputedly lived

under for eleven years by all the parties to this suit, as well as by the three railroads affected, were property rights resulting to the appellees—especially as between themselves and the appellant union—by virtue of the 1920 and 1921 agreements as constituting an enforceable contract between such union and themselves.

Obviously, the third of the stated contentions could not be well taken, for the reason that no one of the other three great brotherhoods was in any way concerned in this internal dispute between the appellant and its four members, the appellees, alone. This is the undisputed proof, as well as the finding and holding of the trial court, hence need not be further enlarged upon.

Indeed, as indicated supra, since the appealed from judgment adversely disposes not only of the three specified objections of the appellants, but of all others they appear to have intended to make, upon findings of both fact and law that are not shown to have been either unsupported or erroneous, and since no fundamental error appears upon the face of the record, unless in the want of indispensable parties defendant to the suit, an affirmance of that action should follow.

On original disposition of the cause, this court on April 29, 1937, holding merely generally, upon its own initiative, since the appellants did not complain in that particular, that there was such a defect of parties, ordered a reversal, with this member reluctantly acquiescing therein until a reconsideration, but not agreeing to the majority opinion then delivered; that rehearing has now been had, under further arguments from both sides, with the result that, by a like majority action, the reversal is adhered to, with this particularization of the holding formerly made: "There are at most but four positions involved in this suit, the exclusive right to fill which appellees are claiming in this action. If appellees are awarded such exclusive right, the necessary result will be to exclude the train service employees of the I. & G. N. and M. K. & T., who were awarded the right to fill such positions for fifty per cent of the time by President Whitney of defendant union, from the performance of any service on the train in question. Such train service employees are therefore indispensable parties to this suit."

Unable to longer acquiesce in such a conclusion, this member now enters his dissent thereto, upon these, among other, considerations:

As before suggested, the controversy was purely an inter-family one between the four appellees, as members in good standing of it, and the appellant brotherhood, which, together with its governing officers, in both their official and personal relations, were proceeded against, Mr. Johnson, who was at first vouched in, having been dropped en route; likewise, as the appeal bond shows, such parties only are those participating in the review of the judgment here; the injunction granted is further operative only in favor of such appellees and against such appellants; in such a state of facts, as presaged at the beginning hereof, R.S. art. 6133 would seem to be clearly applicable, this appellant brotherhood being an unincorporated association for business purposes within the meaning thereof, as was directly held by the Amarillo Court of Civil Appeals in Brotherhood of Railroad Trainmen v. Cook, 221 S.W. 1049, in which writ of error was refused by the Supreme Court; thereafter, the Eastland Court of Civil Appeals in Kansas Life Ins. Co. v. First Bank of Truscott, 47 S.W.(2d) 675, 677, which judgment was thereafter affirmed by the Supreme Court, as reported in 124 Tex. 409, 78 S.W.(2d) 584, reiterated the same holding under the citation of a number of other authorities, in this declaration: "The rule may be stated to be that, under authorization of said statute, an unincorporated association, organized for the purpose of conducting a business, can sue and be sued upon causes of action affecting the entire membership alike in the association name alone."

If it could be said that R.S. art. 6133 is not applicable, however, both the pleadings and proof here show, and the trial court found and held, that Messrs. Stevens and Bryan, general chairmen of the Brotherhood of Railroad Trainmen, have exclusive jurisdiction over the train employees, on the I. & G. N. properties and M. K. & T. properties, respectively, and that they are vested with full authority to represent all of such employees operating from and out of Palestine, Tex., and Denison, Tex., and all train employees claiming an alleged interest in conflict with those of the appellees; that Stevens and Bryan had complete and unequivocal authority to exercise the right of negotiating agreements concerning standards of wage, and hours of labor, for and on behalf of all train employees claiming an

alleged interest in conflict with those of these appellees; and that such train employees were bound by the contracts and agreements thus entered into and made by Messrs. Stevens and Bryan, who were herein sued both in their official and individual capacities.

Finally, it is thought, upon this feature, that the equitable doctrine of "parties by representation" is also applicable, under the full findings and holdings made in the trial court's judgment in this connection, and that, at all events, the employees of the two railroads mentioned, who were themselves members of the appellant order, should be held in law and equity to have been present through their superior brotherhood officers, who dealt with the appellees, as this record shows; indeed, the appellant Bryan himself testified that the General Grievance Committee of the appellant brotherhood had complete authority for the membership and all concerned to regulate all contract and seniority rights, such as are here involved, on each and all of the railroads affected; he made it further clear as a matter of fact that the railroads and their other employees recognized such plenary power in the appellant brotherhood and its Grievance Committee, and that they each and all acquiesced in its exercise as affecting these appellees for the uninterrupted eleven years, during which they enjoyed the seniority rights that form the subject-matter of this litigation; the appellant Stevens also verified in like manner that he had the same authority, under this testimony elicited by the court itself during this trial:

"Court: So far as you know, Mr. Stevens, Mr. Bryan is general chairman for the Katy line in Texas? A. Yes, sir.

"Court: And has the same authority within his respective jurisdiction and functions the same way as you do as general chairman in the I. & G. N. in your respective jurisdiction? Yes, sir."

Without further discussion, it is herein held that the motion for rehearing should have been granted, and an affirmance of the trial court's judgment ordered.

Material Findings of Fact and Law, as Embodied in Trial Court's Judgment.

"The Court finds: That plaintiffs, W. L. Price, P. H. Waters, and R. H. Martin, are all members in good standing of the Brotherhood of Railroad Trainmen and have been such for many years; that the plaintiff, F. A. Llewellyn was for many years a member in good standing in said order, but was forced, on or about the year 1931, to drop his membership in said order by reason of unemployment; that plaintiffs, W. L. Price, P. H. Waters, F. A. Llewellyn and R. H. Martin, entered the service of the G. H. & H. Railway Co., in the capacity of trainmen on the following respective dates: Price, July 28, 1905; Waters, July 25, 1908; Llewellyn, October 20, 1906; Martin, August 21, 1911. That all four plaintiffs remained continuously in the train service of said G. H. & H. Railway Company from the dates of their respective employment to the present date, except as was altered by the action of the Brotherhood of Railroad Trainmen and the respective railway companies mentioned in this suit, as will be hereinafter explained. That said G. H. & H. Railway Co. is now, and has been for more than 50 years, an independently operated railway company, operating under a Texas charter; that since the year 1895, all, or practically all, of the stock of said G. H. & H. Railway Co. has been owned 50% by the M. K. & T. Railway Co., and 50% by the International Great Northern Railway Co.; that from the 28th day of July 1905, to the 1st day of March, 1920, said G. H. & H. Railway Co. had customary contracts with the Brotherhood of Railroad Trainmen and the other railroad brotherhood governing the seniority rights and working conditions of the train and engine employees operating the trains of said railway. That from and prior to the year 1895 down to the 1st day of March, 1920, the International Great Northern Railway Co. and the M. K. & T. Railway Co. operated such freight and passenger trains as they elected, manned by their respective employees over the tracks of the G. H. & H. Railway Co. into Galveston under certain trackage arrangements satisfactory to the said I. & G. N. R. R. Co. and the M. K. & T. R. R. Co. with the G. H. & H. R. R. Co., that during said period said G. H. & H. R. R. Co., also operated such freight and passenger trains between Houston and Galveston manned by G H. & H. employees, as it saw fit. That on March 1, 1920, it was decided by said railway companies that the G. H. & H. R. R. Co. would no longer operate its own freight and passenger trains, but that all freight and passenger business between Houston and Galveston and intermediate points accruing to said company would be handled for the account of said G. H. & H. R. R. Co. by the International Great North-

ern R. R. Co. and the M. K. & T. R. R. Co. in alternating years; that is to say, the International Great Northern R. R. Co. would handle the G. H. & H. business in its trains for the first year and the M. K. & T. R. R. Co. would handle the business of the G. H. & H. R. R. Co. for the second year and thus the two parent lines would alternate from year to year. After this arrangement by the respective railway companies, the G. H. & H. R. R. Co. ceased to operate its own trains, and said arrangement has continued to the date of this trial. On the date of this arrangement the plaintiff, Price, had seniority rights with the G. H. & H. R. R. Co. and the Brotherhood of Railroad Trainmen of approximately 15 years as a trainman and conductor, and the other three plaintiffs had substantial seniority rights, as is shown above, from their date of employment. On said March 1, 1920, it was the unwritten rule and policy of the Brotherhood of Railroad Trainmen, as well as the three other railroad brotherhoods, that when one railroad company whose employees had been covered by contracts with the brotherhoods and whose employees were affiliated with said brotherhood took over, absorbed, or merged the business of another railroad whose employees likewise had been covered by contracts with said brotherhoods and who were affiliated with said brotherhoods, the seniority rights of the train employees on the merged lines would be preserved and protected in an equitable manner on said merging railway line; that under all precedent in such cases, so far as the record in this case shows, the employees of the merged line were accorded their full seniority rights on the merging line. In this connection the Court finds that the seniority rights of a trainman is a valuable property right and always heretofore has been zealously protected and contended for by the Brotherhood of Railroad Trainmen and the other three railroad brotherhoods. That when the arrangement of March 1, 1920, was made by the respective railway companies a controversy immediately arose between the train employees of the G. H. & H. Railway Co., including the plaintiffs herein, and the train employees of the International Great Northern R. R. Co. and the M. K. & T. R. R. Co. as to the division of work on the G. H. & H. R. R. Co. and the seniority rights and other rights to be accorded the old G. H. & H. employees under the new arrangement, the respective railway companies leaving a solution of this controversy to the respective brotherhoods, as was customary and usual. That the plaintiffs here and other G. H. & H. train and engine employees contended at that time that under the unwritten policy of the brotherhoods and under established precedents they should be taken over by the International Great Northern R. R. Co. or the M. K. & T. R. R. Co. with their full seniority rights preserved. Employees of the I. & G. N. R. R. Co. and the M. K. & T. R. R. Co. contended that said G. H. & H. train and engine employees should not be accorded any seniority on their respective lines, but should only be accorded prior rights on any service operated exclusively between Houston and Galveston over the rails of the old G. H. & H. R. R. Co. During this controversy the plaintiffs and other G. H. & H. train employees were permitted to enjoy continuous employment on crews operating exclusively between Houston and Galveston, but a final solution of the controversy was continually pressing. On May 21, 1920, Mr. W. G. Lee, then president of the Brotherhood of Railroad Trainmen, wired the local I. & G. N. and M. K. & T. general chairman that he was sending Deputy Grand Lodge Officer Corrigan to Galveston for the purpose of settling said controversy and that any percentage agreement that might be arrived at would be legal and satisfactory; that on May 24, 1920, a hearing of said controversy was had in Galveston by the interested employees and their representatives, and it was proposed by Deputy Grand Lodge Officer Corrigan, in substance, that none of the G. H. & H. train or engine employees should be accorded any of their existing seniority rights on either the Katy or the I. & G. N. This suggestion was contrary to all precedent in such matters. He proposed, instead, that one crew of the G. H. & H. R. R. Co. be taken over by the I. & G. N. R. R. Co. as of March 1, 1920, and permitted to accumulate seniority from that date, and that the other crew be taken over by the M. K. & T. R. R. Co. as of March 1, 1920, and permitted to accumulate seniority from said date, and it was further suggested that 'the G. H. & H. train and engine employees should have their prior rights in their respective classes in accordance with their seniority in the service of the Galveston, Houston & Henderson Railroad Co. to any service that is hereafter assigned to operate exclusively between Houston and Galveston until such time as they may elect to exercise the seniority

rights attained elsewhere on the seniority division or district to which they are attached.' This proposed agreement and settlement was accepted by the employees of the International Great Northern and the M. K. & T. R. R. Co. and by the general chairman representing said employees, but was not accepted by the employees of the G. H. & H. R. R. Co. The controversy continued to wage, with the G. H. & H. employees contending they should be accorded all or, at least, a part of their seniority on the Katy and the I. & G. N. and said employees were continued in regular and constant service between Houston and Galveston. On November 18, 1920, a decision and ruling was made at Cleveland, Ohio, by L. E. Sheppard, President, Order of Railroad Conductors; W. G. Lee, President, Brotherhood of Railroad Trainmen; W. S. Stone, Grand Chief Engineer, Brotherhood of Locomotive Engineers; and W. S. Carter, President, Brotherhood of Locomotive Firemen and Enginemen, purporting to settle definitely and finally the controversy theretofore existing between the train and engine employees of the G. H. & H. R. R. Co. and those of the I. & G. N. and M. K. & T. R. R. Cos. respecting the rights of the G. H. & H. employees. A copy of this decision and ruling was sent to the plaintiffs herein, as well as to the respective representatives and local chairmen of the I. & G. N. and M. K. & T. employees, as well as to the officials of the interested railway companies, with instruction that same be put into effect. This ruling concludes with the following statement: 'We believe that the above ruling is equitable and fair and does justice to all, and hope same will be accepted as a solution of this long-drawn-out controversy, and applied and made effective with as little delay as possible.' This decision and ruling was made effective by its terms as of March 1, 1920, and was accepted by the plaintiffs herein as well as the then other G. H. & H. train and engine employees and was accepted by the representatives of the International Great Northern and M. K. & T. train and engine employees as well as the respective railroad companies, and all parties worked under the terms of said decision and ruling from the 1st day of March, 1920, until about the year 1931. This decision and ruling was in substantial accordance with Mr. Corrigan's suggestions and provided that one of the G. H. & H. crews would be taken over by the International Great Northern and permitted to accumulate seniority from March 1, 1920, and the other crew would be taken over by the Missouri, Kansas & Texas Railroad Co. and permitted to accumulate seniority from March 1, 1920. Paragraph 5 of said ruling provided: 'The former Galveston, Houston & Henderson employees will have prior rights (in their respective classes of service) in accordance with their seniority in the service of the Galveston, Houston & Henderson Railroad, to any service operated exclusively between Houston and Galveston, and when there is no regular assigned service for the members of crew No. 2 they may exercise their seniority on Crew No. 1, and vice versa.' Paragraph 6 of said ruling provided: 'The prior rights established for the Galveston, Houston & Henderson Railroad employees, in the previous paragraph, will continue until such time as they may elect to exercise their seniority rights acquired elsewhere.' The decision and ruling aforesaid is quite comprehensive and recites a full history of the controversy and contains numerous clauses, which convinces this Court that it was the intention of the Grand Lodge officers rendering said decision to settle for all time the controversy theretofore existing between the train employees of the G. H. & H., I. & G. N., and M. K. & T. Railway Companies, and that the effect of said decision was, and the Court so finds, that it denied to the G. H. & H. employees credit on either the I. & G. N. or the M. K. & T. Railways for any of their seniority existing prior to March 1, 1920, as contended for by them, and that, in consideration for this denial of their contentions, the G. H. & H. trainmen involved, including plaintiffs, were given by said decision and contract the exclusive prior right to man, in accordance with their respective seniority rights on the G. H. & H. any service operated exclusively between Houston and Galveston on either the I. & G. N. or the M. K. & T. That it was contemplated in said agreement and decision that as these old G. H. & H. train and engine employees died or retired from the service or were dismissed from the service no employees would be employed by the G. H. & H. but that those remaining only should have the prior rights accorded G. H. & H. employees. That at the time of this suit the plaintiffs herein are the only G. H. & H. employees left in service of those interested in the decision of November 18, 1920; that for a number of years prior to March 1, 1931, plaintiffs were the only old G. H. & H.

trainmen left who were accorded rights under the decision of November 18, 1920; that for a number of years prior to March, 1931, the M. K. & T. R. R. Co. and the I. & G. N. R. R. Co., in alternating years, operated between Houston and Galveston what was known in railroad parlance as 'the Local', which run was manned by the plaintiffs herein under the prior rights accorded them in the decision of November 18, 1920, they being the only G. H. & H. train employees left in service. During this time, that is, prior to March, 1931, the I. & G. N. R. R. Co. and the M. K. & T. R. R. Co. each operated one or more crews exclusively between Houston and Galveston in what was known as 'through freight service'. These crews were manned by I. & G. N. and M. K. & T. employees. On March 1, 1931, owing to lack of business, the M. K. & T. R. R. Co., it being their year to operate the local freight service for the G. H. & H. under the company's agreement of March 1, 1920, decided to consolidate what was known as the local service with its through freight service; in other words, instead of running both a local service and a through freight service, the M. K. & T. R. R. Co. decided to operate one train, which was required to handle both through and local business. These plaintiffs, they being the only remaining G. H. & H. train employees, contended that they were entitled under the decision of November 18, 1920, to the prior right to man this crew, both because said crew was required to do local work and, secondly, because under said decision G. H. & H. employees were entitled to prior rights to man any service operated exclusively between Houston and Galveston. The M. K. & T. employees contended that the decision of November 18, 1920, gave the G. H. & H. employees prior right only to man the local crew and that the merger aforesaid of the two services had the effect of abolishing the local. The M. K. & T. employees, through their general chairman, the defendant E. R. Bryan, communicated with the defendant A. F. Whitney, President of the Brotherhood of Railroad Trainmen, by letter, by wire, and in person, and induced the said Whitney to cause to be issued, after hearing a ruling to the effect that the G. H. & H. employees, plaintiffs herein, were only entitled to 50% of the work on the consolidated crew aforesaid. The G. H. & H. employees, plaintiffs herein, strenuously objected to such ruling, contending that their rights to operate any service operated ex-clusively between Houston and Galveston, and more particularly the crew assigned to do local work, was a fixed right in them under the decision of November 18, 1920. Their protest and appeal against this decision was ignored, and plaintiffs were pulled out of service for approximately a year's time, but later, on or about March 1, 1933, were restored to said run and continued to operate the crew assigned to do local work between Houston and Galveston on both the Katy and the I. & G. N. in alternating years until on or about the month of January, 1935, at which time the service was being operated by the I. & G. N. In December, 1934, the defendant R. P. Stevens, as general chairman of the B. of R. T., in behalf of the International Great Northern trainmen, caused the defendant A. F. Whitney to issue, or cause to be issued, an additional ruling further attempting to restrict the prior rights of the G. H. & H. employees, to the effect that during the year that the I. & G. N. R. R. Co. was handling the local G. H. & H. business 50% of the work on said run should be given to G. H. & H. employees and 50% to the I. & G. N. employees. The G. H. & H. employees, plaintiffs herein, strenuously opposed and resisted this attempt to modify and change the decision of November 18, 1920, which accorded them prior rights to any service operated exclusively between Houston and Galveston. In this instance their appeals and protests were ignored, and they were notified that as of February 1, 1935, they would be pulled out of service and I. & G. N. employees permitted to operate said service. That the purpose and effect of these two latter decisions was to give to the I. & G. N. employees, and the M. K. & T. employees in alternating years 50% of the work on the trains of their respective lines which operated exclusively between Galveston and Houston doing local work, which service the Court finds was granted exclusively to the G. H. & H. employees, plaintiffs herein, so long as they did not elect to claim their respective seniority on the Katy and I. & G. N. accumulated since March 1, 1920. I find that each and all of the plaintiffs herein have consistently, since November 18, 1920, failed and refused to exercise any seniority rights on either the I. & G. N. or the M. K. & T.; that their reason for not claiming any seniority rights on the I. & G. N. and the M. K. & T. accumulated since March 1, 1920, was because of the fact that the decision of November 18, 1920, accorded to

them prior rights to man any service operated exclusively between Galveston and Houston only so long as they did not exercise their seniority rights on either the Katy or the I. & G. N. R. R. Co. That when the defendant Whitney, acting for the defendant Brotherhood of Railroad Trainmen, and the defendant R. P. Stevens, in his capacity as local general chairman for the I. & G. N. train employees, refused to entertain any appeal or protest of the G. H. & H. employees, plaintiffs herein, against the decision taking from them 50% of their rights as aforesaid and notified these plaintiffs that he would cause the defendant R. Johnson, as trainmaster of the I. & G. N. Railway Co., to post a bulletin which would have the effect of pulling these plaintiffs out of service and substituting them with employees of the International Great Northern, and when the defendant E. R. Bryan notified these plaintiffs that on March 1, 1935, the date when the M. K. & T. would take over the operation of the G. H. & H. local service, these plaintiffs would be permitted only 50% of said service, this suit for a temporary injunction against their being pulled out of the I. & G. N. service in January, 1935, was filed, seeking on final hearing a permanent injunction against all the defendants named herein, enjoining them from issuing, causing, or permitting to be issued, any bulletin or order, the effect of which was to deprive them of the prior rights to operate on the I. & G. N. and the M. K. & T. in alternating years any service operating exclusively between Houston and Galveston and more particularly that service which handled the G. H. & H. R. R. Co.'s local work. On January 31, 1935, a temporary injunction was entered in the cause by this court, restraining the said defendants, and particularly the defendant R. P. Stevens, from issuing, causing, or permitting to be issued any bulletin or order that would have the effect of pulling these plaintiffs out of I. & G. N. service on the local operating exclusively between Houston and Galveston during the remainder of the year that the I. & G. N. was handling said service. Said temporary injunction also restrained the defendant E. R. Bryan from issuing or causing to be issued any bulletin or order, the effect of which was to prevent G. H. & H. employees from enjoying their prior right to operate the crew handling G. H. & H. local exclusively between Houston and Galveston when the M. K. & T. R. R. Co. took over such services on March, 1935. No appeal was taken from the order of the Court granting said temporary injunction. The temporary injunction was respected by the defendants and particularly by the defendant Stevens in so far as the I. & G. N. service was concerned. On March 1, 1935, when said local service was taken over by the M. K. & T. the old G. H. & H. employees, plaintiffs herein, were pulled out of service and denied the right to man the Katy crew handling the G. H. & H. local operating exclusively between Houston and Galveston. The testimony of the defendant Bryan was to the effect that he did not cause to be issued the bulletin which had the effect of pulling the plaintiffs out of Katy service aforesaid, but this Court is of the opinion that he could have, had he acted within the spirit of the injunction, prevented such action. No proceedings for contempt, however, were instituted against defendant, E. R. Bryan, or any other defendants involved. Since March 1, 1935, the M. K. & T. R. R. Co. has continuously operated a freight train exclusively between Houston and Galveston, in which train the local service of the G. H. & H. is handled, which said crew was manned exclusively by M. K. & T. employees, and the G. H. & H. employees, plaintiffs herein, have been without employment with either the I. & G. N. or the M. K. & T. since March 1, 1935. The I. & G. N. will take over the handling of the G. H. & H. local on March 1, 1936, under the present arrangement of the respective railway companies; and it is admitted by the defendants herein that the G. H. & H. employees, plaintiffs herein, will be denied the right to operate more than 50% of this service unless the rights of the G. H. & H. trainmen, plaintiffs herein, are protected by an injunctive order of this Court. From the facts aforesaid, the Court is of the opinion that the decision of the Grand Lodge officers of November 18, 1920, which was accepted and acquiesced in by the plaintiffs herein, as well as the interested M. K. & T. and the I. & G. N. train employees and their representatives, took from the G. H. & H. employees their right to claim all or a part of their seniority existing on March 1, 1920, on the I. & G. N. and the M. K. & T., and gave them instead exclusive prior rights to man any service operated exclusively between Houston and Galveston and particularly the service handling G. H. & H. local work; that this decision constituted a binding contract between the interested

parties and was acquiesced in and worked under for a term of 10 years, and that the attempt on the part of the defendant Whitney, acting for the Brotherhood of Railroad Trainmen, and the defendants Stevens and Bryan, general chairmen for the I. & G. N. and the M. K. & T. train employees, respectively, in 1932 and 1934, respectively, to take from the G. H. & H. employees 50% of the rights accorded them under said decision of November 18, 1920, was unlawful and unreasonable both under the terms of said decision and under the constitution and by-laws of the Brotherhood of Railroad Trainmen, and that their refusal to permit or entertain an appeal from said attempted decisions by the G. H. & H. men entitled the plaintiffs to invoke the aid of a Court of equity. It is therefore by the Court considered, ordered, adjudged and decreed that the temporary injunction against the defendants herein as entered in this cause of January 31, 1935, be and the same is hereby made permanent and perpetual; and the defendants, and each of them, and particularly the defendants A. F. Whitney, as president of the Brotherhood of Railroad Trainmen, and the defendant E. R. Bryan, as general chairman of the B. of R. T., M. K. & T. R. R. Co. at Denison, Texas, and the defendant R. P. Stevens, general chairman of the B. of R. T., I. & G. N. R. R. Co. at Palestine, Texas, are permanently enjoined from issuing, or causing to be issued, any bulletin, order, or edict, directly or indirectly, whereby the plaintiffs herein, as old G. H. & H. employees under the agreement of November 18, 1920, will be deprived of the prior right to operate exclusively the train service on either the I. & G. N. or the M. K. & T. in which the local service of the G. H. & H. R. R. Co. is being handled exclusively between Houston and Galveston. And in addition to the injunction herein above entered, it is the further opinion of the Court, and it is by the Court considered, ordered, adjudged and decreed, that under the pleadings and facts of this case the defendants, and particularly the defendants R. P. Stevens, E. R. Bryan, and A. F. Whitney should be, and they are hereby commanded to forthwith cause to be issued such bulletin and order as are necessary to establish the plaintiffs, as old G. H. & H. employees, in their prior rights to operate exclusively any service operating exclusively between Houston and Galveston on either the I. & G. N. or the M. K. & T. in which the local service of the G. H. & H. R. R. Co. is being handled."