

CHIEF JUSTICE
JAMES T. WORTHEN

JUSTICES
SAM GRIFFITH
DIANE DeVASTO

# TWELFTH COURT OF APPEALS

CLERK
CATHY S. LUSK

CHIEF STAFF ATTORNEY
MARGARET HUSSEY

Tuesday, February 28, 2006

Mr. David F. Bragg
823 Congress Avenue
Suite 1100
Austin, TX 78701

Mr. Gregory D. Smith
Ramey & Flock, PC
100 East Ferguson
Suite 500
Tyler, TX 75702

Ms. Patricia Chamblin
Mehaffy Weber, PC
2615 Calder Avenue
Suite 800
Beaumont, TX 77702

Ms. Marie R. Yeates
Vinson & Elkins, LLP
2300 First City Tower
1001 Fannin St, Ste 2300
Houston, TX 77002-6760

**RE:** Case Number:      12-04-00129-CV
      Trial Court Case Number:   02CV-27,349

**Style:** Texas Thoroughbred Breeders Association, Dave Hooper and Sue Cook
       v.
       Jim Donnan and Gerald Mackey

Enclosed is a copy of the Opinion issued this date in the above styled and numbered cause. Also enclosed is a copy of the Court's judgment.

Very truly yours,

CATHY S. LUSK, CLERK

By: *Katrina McClenny*
     Katrina McClenny, Chief Deputy Clerk

CC:      Hon. John Ovard
        Judge Charles R. Mitchell
        Ms. Marsha Singletary

## NO. 12-04-00129-CV

## IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *TEXAS THOROUGHBRED BREEDERS* *ASSOCIATION, DAVE HOOPER* *AND SUE COOK,* *APPELLANTS* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *JIM DONNAN AND GERALD MACKEY,* *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

### *OPINION*

Appellants Texas Thoroughbred Breeders Association ("TTBA"), Dave Hooper, and Sue Cook challenge the trial court's entry of a judgment ordering a permanent injunction and awarding Appellees Jim Donnan and Gerald Mackey $250,195.83 in damages for negligence and defamation. We vacate the trial court's judgment and dismiss this case for want of jurisdiction.

### BACKGROUND

Donnan and Mackey are the owners of a thoroughbred horse named Chauffe Au Rouge.[1] They acquired the horse in the summer of 2001 and entered it in races in Louisiana shortly thereafter. When he bought the horse, Donnan knew that it was "Texas-bred." However, in order to race

---

[1] For the sake of convenience, we will refer to both owners as "Donnan." "Chauffe Au Rouge" is French for "red hot."

Chauffe Au Rouge in select Texas races, the horse would have to become an "Accredited Texas-bred" horse. The decision to qualify a horse as an accredited Texas-bred horse rests with TTBA. The difference between "Texas-bred" and "Accredited Texas-bred" may seem razor thin at first glance. However, the distinction between the two serves as the basis for this litigation because TTBA first accredited and then rescinded its accreditation of Chauffe Au Rouge as an "Accredited Texas-bred" horse.

In *Hatley v. American Quarter Horse Ass'n*, 552 F.2d 646, 654-55 (5th Cir. 1977), a case reviewing a district court's decision concerning the registration of a quarter horse, the United States Court of Appeals for the Fifth Circuit stated, "Federal review of quarter horse registrations for state law [due process] violations is rare and curious, but nonetheless proper. [citation omitted] The district court ventured into the thorny and treacherous thicket of Texas law and emerged unscathed." In order to properly understand the context of this appeal, we shall likewise venture into the "thorny and treacherous thicket of Texas law" regarding the microcosm that is Texas thoroughbred horse racing.

## The Rules, Laws, and Governing Entities of Thoroughbred Horse Racing in Texas

Horse racing officially came to Texas with the passage of the Texas Racing Act ("the Act") in 1986. *See* Acts 1986, 69th Leg., 2nd C.S., ch. 19, § 1. The purpose of the Act is "to provide for the strict regulation of horse racing and greyhound racing and the control of pari-mutuel wagering in connection with that racing." TEX. REV. CIV. STAT. ANN. art. 179e, §1.02 (Vernon Supp. 2005). The Act created the Texas Racing Commission (the "commission" or "TRC") and mandated that

> [t]he commission shall regulate and supervise every race meeting in this state involving wagering on the result of greyhound or horse racing. All persons and things relating to the operation of those meetings are subject to regulation and supervision by the commission. The commission shall adopt rules for conducting greyhound or horse racing in this state involving wagering and shall adopt other rules to administer this Act that are consistent with this Act. The commission shall also make rules, issue licenses, and take any other necessary action relating exclusively to horse racing or to greyhound racing.

*Id.* § 3.02(a). The Act allows the commission or a section of the commission to appoint a committee of experts, members of the public, or other interested parties to advise the commission or a section of the commission about a proposed rule. *Id.* § 3.02(f). The Act also mandates that the commission,

2

in adopting rules and in the supervision and conduct of racing, shall consider the statewide effect of a proposed commission action on the state's agricultural, horse breeding, and horse training industries. *Id.* § 3.02(g).

TTBA is a nonprofit corporation that promotes thoroughbred breeding, racing, and owning in Texas. It is also designated by the Act as the official state horse breed registry for accredited Texas-bred thoroughbred horses.[2] *Id.* § 9.02. An "accredited Texas-bred horse" ("ATB") is defined in the Act as "a Texas-bred horse that meets the accreditation requirements of the state breed registry of that breed of horse." *Id.* § 1.03(22). The Act defines a "Texas-bred horse" as

> a horse qualified under the rules of the commission that is:
>
> (A)  sired by a stallion standing in Texas at the time of conception and foaled by a mare in the mare's lifetime if the mare is bred back to a stallion standing in Texas;
>
> (B)  foaled by a mare bred outside Texas and brought into Texas to foal at any time in the mare's lifetime if the mare is bred back to a stallion standing in Texas; or
>
> (C)  a Thoroughbred or Arabian horse foaled in Texas by an accredited Texas-bred mare if the mare was bred outside Texas and returned to Texas on or before August 15 of the calendar year of conception.

*Id.* § 1.03(21). The Act further provides that the state horse breed registries shall make reasonable rules to establish the qualifications of ATBs "to promote, develop, and improve the breeding of horses in this State." *Id.* § 9.01. Rules adopted by a registry are subject to TRC approval. *Id.*

The Act mandates that an "association"[3] shall provide for the running of races limited to ATBs, each to be known as a "Texas-bred race." *Id.* § 9.03(a). To encourage the breeding of horses in the state of Texas, any ATB finishing first, second, or third in any race in Texas, except for a restricted stakes race, shall receive a purse supplement. *Id.* § 9.03(b). The Act mandates that TTBA

---

[2] The Act defines "state horse breed registry" as a "designated association administering accredited Texas-bred requirements for its specific breed of horses." TEX. REV. CIV. STAT. ANN. art. 179e, § 1.03(24) (Vernon Supp. 2005).

[3] An "association" is defined as "a person licensed under this Act to conduct a horse race meeting or a greyhound race meeting with pari-mutuel wagering." TEX. REV. CIV. STAT. ANN. art. 179e, § 1.03(2) (Vernon Supp. 2005).

"shall act in an advisory capacity to the association and the commission for the purpose of administering the provisions of [Texas-bred racing]." *Id.* An ATB thoroughbred horse that finishes first, second, or third in any race other than a Texas-bred race shall receive an owner's bonus award as a purse supplement. *Id.* § 9.03(c). TTBA pays the winners of the ATB races with funds received from TRC. The TRC obtains the funds from associations that withhold a percentage of the total amount wagered on each race that is run at a horse racing facility. *Id.* § 6.08(d), (f), (j).

## The Accreditation of Chauffe Au Rouge as an ATB

Donnan acquired Chauffe Au Rouge in the summer of 2001 and began racing it in Louisiana. He learned that in order for the horse to run in an accredited Texas-bred horse race, he would have to obtain accreditation for Chauffe Au Rouge from TTBA. Donnan spoke with Jennifer Gibbs, TTBA's accreditation manager, about obtaining accreditation for Chauffe Au Rouge as an ATB. Gibbs told Donnan that she was familiar with the horse, but that she would have to call him back after checking its background.

While researching Chauffe Au Rouge's background, Gibbs found that High Rent, its mother, was an ATB when Chauffe Au Rouge was foaled. Gibbs also found that Chauffe Au Rouge's sire, Red Attack, was not an ATB when it was foaled. When reviewing the file on Chauffe Au Rouge, she learned that Dr. Jeffery Kass had acquired the horse in March 2000 and tried to get it accredited as an ATB with TTBA. Gibbs saw that, as part of that accreditation process, Dr. Kass learned that High Rent died in 1996 shortly after being bought by the Stanley Brothers in a sale in Arkansas. When Dr. Kass learned that the Stanley Brothers had a reputation for being "killers" (meaning that they sold horses for slaughter), he attempted to get Chauffe Au Rouge accredited due to the circumstances of the death of High Rent. This application for accreditation was denied.

Gibbs called Donnan and told him that a "letter of intent" stating that High Rent was to have been bred to an ATB stallion was needed along with his application for accreditation. At the time Donnan sought to have Chauffe Au Rouge accredited as an ATB thoroughbred, TTBA defined an accredited Texas-bred thoroughbred as follows:

An accredited Texas-bred Thoroughbred is a horse registered with the Jockey Club,

4

accredited with the TTA[4] and conceived and foaled in Texas, out of a mare accredited with the TTA who is permanently domiciled in Texas and sired by a stallion accredited with the TTA and standing in Texas at the time of conception of said foal. Also, any horse foaled in Texas may be eligible to be accredited if the mare becomes an accredited mare permanently domiciled in Texas and is next bred, within two seasons, to any Thoroughbred stallion accredited with the TTA and standing in Texas at the time said mare is covered. If this breed-back is not accomplished the year said foal is born, it must then take place during the breeding season of the foal's yearling year if the foal is to be eligible for accreditation.

Understandably, there will be circumstances that occur which prevent an accredited mare from producing a next foal by an accredited Texas stallion (such as, but not limited to, death or infertility of the mare); however, the intent agreed upon by the owner of the accredited mare and the Texas Thoroughbred Association is for the accredited mare to produce consecutive or alternate foals by stallions accredited with the Texas Thoroughbred Association.

If an accredited Texas mare produces a foal born in Texas and sired by a non-accredited Thoroughbred stallion, and in the following year is bred to a stallion accredited with the TTA, but does not conceive or produce a live foal from the mating(s), the intent of the breeder has been established, and her live foal produced from the non-accredited Thoroughbred stallion may be accredited.

Proof of the mating(s) to the accredited Texas Thoroughbred stallion must be documented via the mare appearing on the stallion's "Report of Mares Bred" report filed by The Jockey Club and the TTA.

If an accredited Texas mare produces a foal born in Texas and sired by a non-accredited Thoroughbred stallion, and the following year cannot be or is not bred (for reasons of health or choice of the mare owner), she must remain in Texas and be bred to an accredited Texas Thoroughbred stallion the following year in order for the foal sired by the non-accredited stallion to be eligible for accreditation with the TTA.

If an accredited mare produces a foal sired by a stallion accredited with the Texas Thoroughbred Association, and that foal is eligible to become accredited, she may then be shipped out of state to be served by a stallion for her next foal provided she returns to Texas to resume her domicile by August 15 of the year bred.

Therefore, in order to have Chauffe Au Rouge accredited as an ATB thoroughbred, the owner of High Rent at the time of her death must have intended to "breed back" High Rent to an ATB stallion before the mare died. This "breed back" rule is further illustrated in the following section of "Frequently Asked Questions" from TTBA's website, which is part of the record in this case:

Q: **What if my foal is by a stallion who isn't accredited and the mare dies before she can be bred back to an accredited stallion?**

---

[4] TTBA changed its name to the "Texas Thoroughbred Association." The date of the change is not reflected in the record and is irrelevant to the issues germane to this appeal.

A:     If a mares [sic] dies after having a foal by a non-ATB sire, you must furnish the TTA office with a notarized letter stating that the mare died before she could be bred back but the intent was to breed the mare to _____ (ATB stallion's name here). This establishes your intent to comply with the "breed-back rule."

In order to obtain the "statement of intent," Donnan called the Stanley Brothers' number and spoke to a woman who told him that she could handle his inquiry. Donnan did not know what needed to be included in the "statement of intent," so he called Gibbs to find out exactly how the statement needed to be worded. According to Donnan, Gibbs told him that the statement needed to say that "the Stanley Brothers intended to breed back High Rent to Hadif, an ATB stallion." Donnan copied this statement verbatim and sent it to the Stanley Brothers via facsimile. Donnan later received a document that stated in its entirety:

### STATEMENT OF INTENT

We purchased the mare High Rent in 1996, [and] it was our intention to breed the mare to the accredited Texas Stallion Hadif in the 1997 breeding season. However we were unable to do so, as the mare died in the fall of 1996.

Dated September 25, 2001

Stanley Brothers C/S
Signed

The statement was notarized by Melissa Anderson, a notary public in the state of Arkansas. Donnan submitted this statement along with his application for Chauffe Au Rouge's accreditation to TTBA. The application Donnan signed also states that "I have read the rules regarding accreditation of Texas-bred weanlings, yearlings, and horses of racing age and do hereby agree to abide by these rules and those of the Texas Thoroughbred Association."

Gibbs received Donnan's accreditation application and accredited Chauffe Au Rouge as an ATB thoroughbred. On September 27, she also notified Hooper, who was the Executive Director of TTBA, and Retama Park, a horse racing association, that the horse was accredited.

**The Inquiry Into Chauffe Au Rouge's Accreditation**

After learning that the horse had been accredited as an ATB, Donnan entered Chauffe Au Rouge to run in the October 6, 2001 Hall of Fame Race at Retama Park. However, on October 3,

Dr. Kass became aware of Chauffe Au Rouge's entry into the race and called Hooper to question the validity of the horse's accreditation. Based on his prior experience with the horse, Dr. Kass disputed whether it was ever intended for High Rent to be bred to an ATB stallion. Specifically, he told Hooper that High Rent was bought at auction by "meaters"[5] and was not intended to be bred back to an ATB stallion.

Once he received this complaint, Hooper pulled Chauffe Au Rouge's accreditation file and spoke with Mary Ruyle, the business manager of TTBA. Hooper also began investigating the validity of the "statement of intent" Donnan filed with his application. Hooper contacted Hadif's owner to see if there was a record indicating the Stanley Brothers' intent to breed High Rent to Hadif. He contacted the sales company where High Rent was purchased to see if the Stanley Brothers bought any other mares and also checked "Equine Line," a horse record keeping source, to see whether any of the horses produced any foals. Hooper learned that the Stanley Brothers bought four mares at the sale and none of those mares had any foals after being bought. After making these inquiries, Hooper found convincing evidence that High Rent was not intended to be bred back to an ATB stallion but was instead sold to be slaughtered. On October 4, Hooper contacted Mike Burleson, the deputy director of the TRC, and told him that there was a problem with Chauffe Au Rouge's accreditation.

Cook was one of TTBA's twenty-one member board of directors and also the wife of the owner of Gold Nugget, one of the horses running in the Hall of Fame Race. Prior to the race, Cook learned about the inquiry into Chauffe Au Rouge's accreditation. On October 5, the day before the Hall of Fame Race, Cook told her trainer, Gerald Romero, to file a protest to the eligibility of Chauffe Au Rouge to run in the race. The record reflects that on October 5, Romero sent a letter to the stewards[6] of Retama Park protesting the "eligibility of 'Chauffe Au Rouge' to compete in the 'Texas Horse Racing Hall Of Fame' for 3 year olds and up Accredited Texas Breds to be run on Saturday October 6, 2001." (Emphasis in original). The letter also stated that "it has come to [his]

---

[5] The term "meaters" is another euphemism for people who buy horses for slaughter.

[6] A "steward" is a racing official with general authority and supervision over 1) the conduct of a licensed race meeting and 2) all licensees at a racetrack during a race meeting. TEX. REV. CIV. STAT. ANN. art. 179e, § 1.03(35) (Vernon Supp. 2005).

7

attention, two previous owners have tried unsuccessfully to accredit Chauffe Au Rouge in the past, putting his eligibility in question."

On October 6, Hooper also wrote a letter to the stewards at Retama Park informing them that "[s]ince Chauffe Au Rouge was accredited on September 27, the Texas Thoroughbred Association has received information to cause the organization to launch an investigation into the legitimacy of the facts it received in order to process the information." Hooper asked the stewards to hold in escrow any funds Chauffe Au Rouge may win in the Hall of Fame Race "and, thereafter, in any other Texas-bred race," until the investigation was completed. Hooper also informed Donnan about the accreditation questions and gave Donnan a copy of the letter to the Retama Park stewards. Hooper told Donnan he would prefer that Donnan not enter the horse in any races reserved for ATBs until the investigation was complete. Donnan claims that Hooper told him the horse's accreditation was in question but that he could go ahead and race the horse. Donnan stated that Hooper did not tell him about the possibility of any winnings being held in escrow. Even though questions were being asked about the horse's accreditation, Donnan chose to race Chauffe Au Rouge in the Hall of Fame Race.

## Chauffe Au Rouge Wins

Chauffe Au Rouge won the Hall of Fame Race, defeating Gold Nugget, which finished second. Pursuant to TTBA's request, the stewards at Retama Park withheld the $60,000.00 Donnan won as a result of Chauffe Au Rouge's first place finish.

On October 7, the day after the race, Dr. Kass sent the following e-mail message to Cook:

Mrs. Cook:

I am extremely disappointed that you decided not to return my phone call regarding the illegal accreditation of Chauffe Au Rouge-who, as I expected, won the Texas Hall of Fame Race at Retama, soundly defeating your horse and denying others their fair share of the purse money. Your indifference to my inquiry is duly noted-unfortunately a common practice among many of the board members of the Texas Thoroughbred Association.

Hopefully, the Board will initiate a prompt and thorough investigation, and punish those responsible for making the state accreditation program the laughing stock of the country. How ironic that an unaccredited horse was allowed to enter the winner's circle and deny that honor to you.

With regards,

Jeffrey Kass, M.D.

Later that day, Cook replied with the following message:

Dr. Kass,

On Friday, Oct. 5th, I was in contact with Dave Hooper getting a full update on the Chauffe Au Rouge situation. I was very concerned that proper procedures were not followed to get this horse accredited. This is very troubling for many reasons. We have set rules, but it seems that there are people trying to bypass them. I urged Dave that this case needs to be fully reviewed.

On this past Friday, I notified my trainer, Gerald Romero, that I wanted a written protest, as allowed in section 313:03 [sic] Texas Racing rules, that an accreditation was in question. This was presented to the Track Stewards on the following Saturday. Dave Hooper delivered a statement in the form of a letter to track officials regarding that the purse should be withhedl [sic] until a full investigation could ensure [sic].

I agree that there are many "cloudy" areas as to how this horse's history was researched and I want anyone who purposely misled our organization to be exposed. I do not blame you at all for being "angry." There were many angry people at the track this past Saturday night. It will be a long time before anyone sees the purse money and I truly think this horse will be discharged. We can not [sic] have this kind of situation in Texas Racing.

Thank you for bringing this to my attention, and I apologize for not responding directly to you. However, I was wanting to get something done.

Sincerely,

Sue Cook


## The Results of the Investigation by the Texas Racing Commission

On November 13, Donnan received a letter from Paula Flowerday, the Executive Secretary of the TRC, informing him that the TRC's investigation of the complaint filed against Chauffe Au Rouge regarding the Hall of Fame Race revealed that

> there was no factual basis for the letter of intent from the Stanley Brothers that [Donnan] submitted to obtain the accreditation. Therefore, that letter of intent was false and a reasonable person should have known it was false. By submitting a false letter of intent to the Texas Thoroughbred Association to obtain the benefits of accreditation, you committed a corrupt and fraudulent act in connection with pari-mutuel horse racing. This constitutes grounds for exclusion from all Texas racetracks under Texas Racing Act, V.T.C.S. Art. 179e, § 13.01(6). Further, because you are subject to exclusion under that section, your Commission license may be suspended under the Act, § 7.04(10).

> Pursuant to Texas Government Code § 2001.056, I am willing to settle this matter informally in lieu of disciplinary action if you will withdraw your application for accreditation of this horse. If I have not heard from you before November 21, 2001, I will refer this matter to the Stewards at Sam Houston Race Park for their action.

## Chauffe Au Rouge Wins Again

Ignoring the investigations into the accreditation status of Chauffe Au Rouge, Donnan chose to race the horse in the December 1, 2001 Richard King Handicap at the Sam Houston Race Park. Before the race, Dr. Kass filed a written protest of Chauffe Au Rouge's eligibility with the stewards at Sam Houston. On November 27, Eric Johnston, the Racing Secretary at the park, sent Hooper a letter requesting confirmation of Chauffe Au Rouge's accreditation. Hooper replied that same day with a letter stating that the horse was accredited as an ATB on September 27, but that the accreditation was challenged and is the subject of an investigation by the TRC. On November 28, TTBA sent Donnan a letter entitled "Notice of Hearing" that informed him of a hearing before the board of directors on January 28, 2002 to determine whether the accreditation of Chauffe Au Rouge should be rescinded or revoked. The notice stated that the hearing was based on the allegation that "accreditation of 'Chauffe Au Rouge' was procured through misrepresentation of the intent of the owner of the mare 'High Rent' to breed such mare to the accredited Texas-bred stallion 'Hadif' in the 1997 breeding season."

Chauffe Au Rouge won the Richard King Handicap, again defeating Gold Nugget, which finished third. Chauffe Au Rouge did not receive the winnings from the race because they were withheld by the stewards of Sam Houston Race Park.

## The Sam Houston Race Park Stewards' Hearing

On December 18, 2001, the Board of Stewards of the TRC at Sam Houston Race Park held an evidentiary hearing on Chauffe Au Rouge's accreditation. The stewards heard testimony from Carolyn Stanley, Donnan, Hooper, and three others. The hearing revealed that Carolyn Stanley was the "C/S" who signed the Stanley Brothers affidavit and that the Stanley Brothers "did not breed thoroughbred horses." Donnan also stated that he had written the statement of intent, faxed it to Arkansas, and received a signed copy, all without ever discussing whether the Stanley Brothers had intended to breed High Rent to an ATB stallion.

The stewards found that Donnan had been unable "to affirm the previous owners' intent to breed High Rent to an accredited stallion." The stewards voted to suspend Donnan's TRC license for one year after determining that he submitted a "false, fraudulent, or incorrect" statement of intent. The stewards also declared Chauffe Au Rouge disqualified from the Hall of Fame Race and the

10

Richard King Handicap and redistributed the purses from those races. The stewards made these decisions on December 22, 2001 and February 25, 2002.

**Donnan's Appeal of the Stewards' Decision**

Donnan appealed the stewards' decision to the State Office of Administrative Hearings on May 24, 2002. On October 1, 2002, an administrative law judge entered a "Proposal for Decision" ("PFD"), finding that Donnan "failed to show that the Stewards' decisions were clearly in error." On December 5, TRC considered the PFD and modified it to suspend Donnan's license for 60 days instead of one year, based on "the lack of evidence regarding [Donnan's] intent to defraud [TTBA]." The TRC upheld the remainder of the stewards' rulings.

Donnan sought judicial review of the PFD in a separate lawsuit that is currently pending in Travis County. *See Donnan v. Texas Racing Comm'n*, No. GN-300615 (250th Dist. Ct., Travis County, Tex. Feb. 26, 2003). In that lawsuit, Donnan maintains that 1) TTBA's rules constitute an unconstitutional delegation of legislative power, 2) TRC's decision is an unconstitutional denial of due process, and 3) TRC's decision rests on a vote taken without statutory authority. *See id.*

**TTBA's Decision to Revoke Chauffe Au Rouge's Accreditation**

On January 20, 2002, the Board of Directors of TTBA conducted its own evidentiary hearing on the matter of Chauffe Au Rouge's accreditation as an ATB. The evidence elicited at the hearing demonstrated that 1) High Rent sold for $400.00 to the Stanley Brothers, 2) the seller of High Rent believed that the horse was being sent to be slaughtered, 3) Hadif, the stallion to whom High Rent was supposedly going to be bred, had a stud fee of $3,500.00, and 4) the owner of Hadif had no record and no memory of anyone calling to ask whether High Rent could be bred to the stallion.

Based on this evidence, TTBA entered an "Order Rescinding Accreditation" on January 24, 2002, with the following "Findings of Fact" and "Conclusions of Law":

Findings of Fact

1. At least 30 days prior to January 18, 2002, written notice of hearing was mailed to and received by Respondents.

2. On September 27, 2001, Breed Registry received the application of Respondents for accreditation under the accredited Texas-bred program of the horse "Chauffe Au Rouge."

11

3.   The application was accompanied and supported by a document styled STATEMENT OF INTENT.

4.   The averment in the STATEMENT OF INTENT that ". . . it was our intention to breed the mare to the accredited Texas stallion Hadif in the 1997 breeding season . . ." was not true or correct.

5.   Such averment in the STATEMENT OF INTENT was a misrepresentation of the intent of the owners of the mare "High Rent" upon which Breed Registry relied as the basis for accreditation of "Chauffe Au Rouge."

Conclusions of Law

1.   Texas Thoroughbred Association, as the Texas Official Thoroughbred Breed Registry, has jurisdiction of the subject matter of this proceeding and the parties thereto pursuant to Sections 6.08, 9.01, and 9.02 of the Texas Racing Act and 16 Texas Administrative Code Sections 303.91 and 303.92.

2.   Formal hearing upon a record was held on January 18, 2002 upon adequate and proper notice to affected parties.

3.   Accreditation of the horse "Chauffe Au Rouge" was procured by misrepresentation as reflected by Findings of Fact 3, 4, and 5.

4.   In accrediting the horse "Chauffe Au Rouge," Breed Registry relied upon the misrepresentation reflected by Findings of Fact 3, 4, and 5, to the detriment of Breed Registry and the accredited Texas-bred program.

5.   Based on Conclusions of Law 3 and 4, the appropriate remedy in this proceeding is recission of accreditation.

## Reports of the Decisions by TTBA and TRC

Soon after TTBA issued its decision rescinding Chauffe Au Rouge's accreditation and TRC suspended Donnan's license, various news agencies, including horse racing websites, reported the decisions in various publications. TTBA published the TRC's decision in its magazine, *The Texas Thoroughbred*. Specifically, Hooper wrote an article describing TRC's decision and stated that "[t]he commissioners reasoned that Donnan had submitted incorrect or false documents in his application for accreditation of Chauffe Au Rouge, but that his actions were not fraudulent." On the website www.thoroughbredtimes.com, TTBA's decision was reported and Hooper was quoted as saying, "[TTBA is] going to advise the racing commission that the board has acted to rescind the accreditation," and "[t]he racing commission, I would assume, will contact the stewards and advise them of this board's decision, and they'll declare the horse ineligible and redistribute the purses."

12

## Donnan Files Suit in Shelby County

On March 5, 2002, Donnan filed a lawsuit in the 273rd Judicial District Court of Shelby County, Texas, naming TTBA, Hooper, Cook, and Cook's husband, Leland, as defendants.[7] In his suit, Donnan sought 1) a permanent injunction ordering TTBA to reaccredit Chauffe Au Rouge as an ATB thoroughbred, 2) damages for libel and slander, and 3) damages for negligence and gross negligence. Specifically, Donnan alleged that 1) TTBA was negligent and grossly negligent in rescinding Chauffe Au Rouge's accreditation as an ATB, 2) the statements made by Hooper and quoted in the publications constituted libel, and 3) Cook's e-mail message to Dr. Kass was libelous. Each defendant answered the suit subject to motions to transfer venue to Travis County, asserting affirmative defenses of res judicata, collateral estoppel, lack of jurisdiction, official immunity, and truth of the statements.

Following a bench trial on January 15, 2004, the trial court entered a final judgment against TTBA, Hooper, and Cook, all jointly and severally, for 1) $100,195.83 in damages for negligence, 2) a permanent injunction ordering TTBA to reaccredit Chauffe Au Rouge as an ATB, 3) $75,000.00 in damages for defamation, and 3) $75,000.00 in damages for gross negligence. The trial court entered findings of fact and conclusions of law on April 16, 2004. TTBA, Hooper, and Cook timely filed a motion for new trial and notice of appeal.

## SUBJECT MATTER JURISDICTION

TTBA, Hooper, and Cook all contend that because TTBA is a voluntary organization, the doctrine of judicial noninterference divests the trial court of subject matter jurisdiction over the affairs of TTBA and its directors. We agree.

### Standard of Review

Subject matter jurisdiction is essential for a court to have authority over a case. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject matter jurisdiction is never presumed, and it cannot be waived. *Id.* at 443-44. Subject matter jurisdiction is fundamental error and may be raised for the first time on appeal. *Grounds v. Tolar Indep. Sch.*

---

[7] Donnan moved to nonsuit Leland Cook on January 6, 2004.

*Dist.*, 707 S.W.2d 889, 893 (Tex. 1986). If the trial court lacked jurisdiction, then an appellate court only has jurisdiction to set the judgment aside and dismiss the cause. *Dallas County Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App.–Dallas 1994, writ denied).

Our standard for reviewing subject matter jurisdiction requires the pleader to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* When reviewing subject matter jurisdiction, we must construe the petition in favor of the pleader, and if necessary, review the entire record to determine if any evidence supports jurisdiction. *Id.* Because subject matter jurisdiction is a question of law, our review is de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

## Analysis

Texas cases addressing the issue of horse accreditation and the governing associations hold that, due to the doctrine of judicial noninterference, courts will not interfere with the internal management of voluntary associations so long as the governing bodies of such associations do not substitute legislation for interpretation and do not overstep the bounds of reason or violate public policy or the laws of this state while doing so. *See Hatley v. American Quarter Horse Ass'n*, 552 F.2d at 656; *Burge v. American Quarter Horse Ass'n*, 782 S.W.2d 353, 355 (Tex. App.–Amarillo 1990, no writ); *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex. Civ. App.–Amarillo 1979, no writ). These cases and others that address issues related to decisions of clubs or voluntary associations reason that it is the policy of the courts not to interfere in the management of the affairs of private, voluntary, nonprofit associations. *See Juarez v. Texas Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 280 (Tex. App.–El Paso 2005, no pet.); *Harden v. Colonial Country Club*, 634 S.W.2d 56, 59 (Tex. App.–Fort Worth 1982, writ ref'd n.r.e.). Texas appellate courts have repeatedly held that

> [c]ourts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the courts may exercise the power of interpretation and administration reserved to the governing bodies of such organizations would plainly subvert their contractual right to exercise such power of interpretation and administration. . . . Without such latitude of action, associations organized to promote the legitimate welfare of its members would be deprived of the power to do so.

14

*Brotherhood of Railway Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex. Civ. App.–Galveston 1937, writ dism'd). This doctrine of judicial nonintervention was also codified in a rule by the TRC that states, "a decision [regarding accreditation] of the [TTBA] board of directors is final and not subject to review." *See* 16 TEX. ADMIN. CODE § 303.92(d)(4) (2004) (Texas Racing Comm'n, Thoroughbred Rules).

The policy of nonintervention in the affairs of private associations, as shown above, is well established and is a wise and necessary policy. *Juarez*, 172 S.W.3d at 280. Without such a policy, organizations such as TTBA simply could not function. *Id*. "If the courts were to interfere every time some member or group of members had a grievance, real or imagined, the nonprofit, private organization would be fraught with frustration at every turn and would founder in the waters of impotence and debility." *Id*. (citing *Harden*, 634 S.W.2d at 60).

In the instant case, we have carefully reviewed the record and conclude that this case is exactly the type of internal dispute that the courts of this state have declined to oversee.
The record clearly reflects that Donnan chose to have Chauffe Au Rouge accredited as an ATB in order to run the horse in select Texas races. In order to do this, he agreed to abide by TTBA's rules. Every claim Donnan asserts against TTBA, Hooper, and Cook arises out of their performance of duties as a voluntary association or director of the voluntary association. Donnan's claims in the suit below clearly seek judicial intervention because he is unhappy with TTBA's decision to rescind Chauffe Au Rouge's accreditation. *Juarez*, 172 S.W.3d at 279. Donnan did not plead for relief based on any lack of due process or constitutional issues; in fact, he expressly disclaims any of those issues on appeal because those are currently in litigation in a Travis County district court. Regardless of the manner in which Donnan has attempted to couch the underlying lawsuit, the courts of this state recognize the right of a private association to govern its own affairs. *Id*. Therefore, the trial court did not have subject matter jurisdiction of Donnan's lawsuit.

## CONCLUSION

Donnan failed to allege facts that affirmatively demonstrated the trial court's jurisdiction to hear the cause. Where the trial court does not have jurisdiction to render a judgment, the proper practice is for the reviewing court to set the judgment aside and dismiss the cause. *See id*. at 281;

TEX. R. APP. P. 43.2(e). Accordingly, the judgment of the trial court is *vacated* and the case is *dismissed* for want of jurisdiction. All pending motions are overruled as moot.

_DIANE DEVASTO_
Justice

Opinion delivered February 28, 2006.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*

(PUBLISH)

16



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## FEBRUARY 28, 2006

## NO. 12-04-00129-CV

### TEXAS THOROUGHBRED BREEDERS ASSOCIATION, DAVE HOOPER AND SUE COOK,
Appellants

V.

### JIM DONNAN AND GERALD MACKEY,
Appellees

---

Appeal from the 273rd Judicial District Court
of Shelby County, Texas. (Tr.Ct.No. 02-CV-27,349)

---

THIS CAUSE came on to be heard on the oral arguments, appellate record and briefs filed herein, and the same being inspected, it is the opinion of this court that the trial court was without jurisdiction to render judgment and that the same should be vacated and the case ordered dismissed for want of jurisdiction.

It is therefore, ORDERED, ADJUDGED and DECREED that the judgment of the trial court below be vacated and the case is hereby ordered dismissed for want of jurisdiction in accordance with the opinion of this court; that the appellants, **TEXAS THOROUGHBRED BREEDERS ASSOCIATION, DAVE HOOPER AND SUE COOK,** recover of and from the appellees, **JIM DONNAN AND GERALD MACKEY**, all costs in this cause expended, both in this court and the court below, for all of which execution may issue; and that this decision be certified to the court below for observance.

Diane DeVasto, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*