Affirmed and Opinion filed June 5, 2007








Affirmed and Opinion filed June 5, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00367-CV

____________

 

RHEA C. STEVENS, Appellant

 

V.

 

THE ANATOLIAN SHEPHERD DOG CLUB OF
AMERICA, INC.,
Appellee

 



 

On Appeal from the County
Court at Law

Austin County, Texas

Trial Court Cause No. 01CV3502

 



 

O P I N I O N








Appellant Rhea C. Stevens is an enthusiast and breeder of a
relatively rare breed of dog known as the Anatolian Shepherd.  Stevens=s interest in the
breed led her to apply for membership in the Anatolian Shepherd Dog Club of
America, Inc. (ASDCA).  The ASDCA never recognized Stevens as a member, despite
retaining her membership fee of thirty dollars.  Stevens sued for specific
performance, exemplary damages, and attorney=s fees due to what
she perceived to be a breach of contract by the ASDCA.  The trial court, after
a bench trial, entered a take-nothing judgment against Stevens, except the
trial court ordered her thirty-dollar membership fee be returned.  Stevens now
raises five issues on appeal.  She claims that the trial court erred in the
following: 1) not recognizing a binding contract for membership between her and
the ASDCA; 2) holding that the laws of contract did not apply in this case to
the ASDCA; 3) failing to find her irreparably harmed and entitled to specific
performance; 4) denying her motion for new trial after alleged misconduct by
the judge; and 5) failing to award her attorney=s fees.  We affirm
the trial court=s judgment because the trial court had the
discretion to refrain from exercising jurisdiction over Stevens=s suit to grant
her membership.  In addition, we hold the trial court did not err in denying
the motion for a mistrial, or in refusing to award attorney=s fees to Stevens.

Factual and Procedural Background

When Stevens applied for membership, she submitted the
ASDCA=s form.  The form
requests basic information about the applicant, including name, address, phone
number, dog-related activities in which the applicant is interested, name and
identification number of any registered Anatolian Shepherds owned, special
skills or abilities that would be useful to the club, other dog or animal clubs
the applicant has joined.  The application then asks the applicant to select
whether they are applying for an Aindividual
membership,@ a Afamily membership,@ or an Aassociate
membership.@  Next to each type of membership is a brief
description of the eligibility requirements for the type of membership.  Next
to the words Afamily membership,@ which Stevens
chose, was a description of the class which stated in relevant part, Aopen to any owner
of an A.S.D.C.A. registered Anatolian Shepherd.@  Below the part
of the application where the applicant selected which of the three member
classes they wished to apply for, the application in bold type stated, AI have read the
A.S.D.C.A. By-laws. I/We agree to abide by the By-laws as adopted by the
ANATOLIAN SHEPHERD DOG CLUB OF AMERICA.@  Below this
statement were two spaces for signatures of applicants.  Stevens=s signature
appears in the first blank.  Immediately below these signature lines appears
another line of text which says, AENDORSED BY TWO
MEMBERS IN GOOD STANDING,@ followed by two more signature lines,
which were left blank by Stevens. 








Stevens was uncertain if the signatures of two members in
good standing were necessary for all levels of applicant.  She discussed this
question with several club members and with Gary Jakobi, then, and currently,
the acting president of the ASDCA.  Testimony differs as to what Jakobi said to
Stevens regarding the signatures.  According to Stevens, Jakobi told her that
she did not need to worry about having anyone sign her application.  However,
Jakobi testified that he told Stevens to get to know the ASDCA members, and he
was confident someone would be willing to sign her application.  Stevens also
testified that several unspecified club officers told her that the member
signatures were unnecessary because missing signatures were often supplied by
club officers themselves when time came to vote on an application.  

Stevens testified that she was further confused by the fact
that the first application form given to her did not have lines for sponsoring
member signatures.  She lost this application, and asked for and received a new
application containing signature lines for current members.  Stevens herself
testified that the bylaws in effect at all times, whether the 1993 bylaws or
the later 1999 bylaws, required sponsor endorsements, despite the absence of
signature lines in the first application form.  

In August of 2000, Stevens finally sent in an application
without any sponsoring signatures.  Enclosed with the application was a check
for thirty dollars and a typed letter containing Stevens=s legal
letterhead, the body of which read as follows:

I have read you[r] application very closely, and I
hereby accept your offer of membership as offered to any owner of an ASDCA
registered dog.

There are no members in my area to endorse my
application, but none are required under the language of the application since
I do currently own an ASDCA registered dog, the name and number of which appear
on the application as requested. 

I look forward to
receiving my membership information, notices, and mailings.








The
ASDCA cashed the check in August.  Stevens testified that she spoke with
Marilyn Harned and two other officers who assured her that her application was Afine@ and that she was
a member.  Stevens also received two editions of the club newsletter, which is
published three times annually.  

But, as time passed, Stevens received no further
newsletters, and wondering what was amiss, she contacted several members of the
ASDCA who told her that she was in fact not a member.  She received a letter
from Jakobi in the summer of 2001, apparently in response to a letter from
Stevens, which explained that all applicants to the ASDCA must be treated the
same, and that properly submitted applications received from July of 2000 on
would be voted on at the next scheduled meeting of the ASDCA Board of
Directors, which was to be held in November of 2001.  The letter also described
an appeals process an applicant can initiate if regular membership is not
granted.  Stevens=s name was listed in the ASDCA newsletter
as an applicant to be voted on, but Stevens never heard anything more from the
club regarding a vote or its result.  

On November 5, 2001, Stevens filed suit in this case.  The
case was tried before the court and judgment rendered that Stevens take nothing
except a refund of her thirty-dollar application feeCrelief not
requested by her.  Findings of fact and conclusions of law were made at Stevens=s request.  The
court concluded that the right of the ASDCA to conduct its own affairs should
prevail over contract law.  The court further concluded that the ASDCA did not
act unreasonably and that Stevens did not suffer the type of economic hardship
that might result in a court=s interference with the affairs of a
membership organization.  

Analysis

I.        Trial
Court Did Not Err in Refusing to Exercise Jurisdiction    

 Stevens=s first three issuesCthe trial court=s failure to
recognize a contract, its holding that contract law does not apply, and its
failure to award her specific performanceCare all related
and will be considered together.     

A.      Texas
Courts Generally Do Not Exercise Jurisdiction Over Affairs of Voluntary
Non-profit Associations








The trial court=s determination
that contract law does not apply here is really an expression of the policy
that Texas courts do not generally exercise jurisdiction over the affairs of
voluntary non-profit associations. Courts are not disposed to interfere with
the internal management of a voluntary association.  Bhd. of R.R. Trainmen
v. Price, 108 S.W.2d 239, 241 (Tex. Civ. App.CGalveston 1937,
writ dism=d).  A member, by becoming such, subjects himself to
his organization=s power to administer, as well as its
power to make, its rules.  Id.  So long as the governing bodies do not
substitute legislation for interpretation, do not transgress the bounds of
reason, common sense, fairness, do not contravene public policy, or the laws of
the land in such interpretation and administration, the courts cannot
interfere.  Id.   

This rule extends to decisions regarding admission of
members into an association.  The Supreme Court has said, A[a] voluntary
association has the power to enact rules governing the admission of members and
prescribing certain qualifications for membership; and such rules will be
enforced, unless they are against good morals or violate the laws of the State.@  Cline v. Ins.
Exch. of Houston, 140 Tex. 175, 166 S.W.2d 677, 680 (1942).  

Despite this general rule, courts will interfere in the
inner-dealings of a private association if a valuable right or property
interest is at stake.  See Hatley v. Am. Quarter Horse Ass=n, 552 F.2d 646,
655 (5th Cir. 1977) (citing Masonic Grand Chapter of Order of Eastern Star
v. Sweatt, 329 S.W.2d 334, 337 (Tex. Civ. App.CFort Worth 1959,
writ ref=d n.r.e.)); Owens
Entm=t Club v. Owens Cmty. Improvement Club, 466 S.W.2d 70,
72 (Tex. App.CEastland 1971, no writ).  Courts have also held that
associations must accord their members something similar to due process, and
have intervened in the inner-dealings of associations on this ground as well.  See Hatley, 552 F.2d at 655; see also Sweatt,
329 S.W.2d at 337; Price, 108 S.W.2d at 241.   








B.      Standard
of Review

Courts of appeals have considered whether a trial court
correctly decided to intervene or not to intervene in the affairs of a private
non-profit association.  However, rarely have the courts discussed the relevant
standard of review.  We have found only two cases in which the courts
considered the standard of review.  See Tex. Thoroughbred Breeders Ass=n v. Donnan, 202 S.W.3d 213,
223B24 (Tex. App.CTyler 2006, pet
denied); Juarez v. Tex. Ass=n of Sporting
Officials El Paso Chapter, 172 S.W.3d 274, 278 (Tex. App.CEl Paso 2005, no
pet.).  Both cases applied a de novo review because they concluded that the
doctrine of judicial non-interference was a jurisdictional rule implicating
subject matter jurisdiction.  See Donnan, 202 S.W.3d at 223B24; Juarez,
172 S.W.3d at 277B78.  

Other cases have not expressly stated the standard of
review they applied.  See, e.g., Hatley v. Am. Quarter Horse Ass=n, 552 F.2d 646
(5th Cir. 1977); Cline v. Ins. Exch. of Houston, 166 S.W.2d 677 (Tex.
1942); St. Louis & S.W. Ry. Co. of Tex. v. Thompson, 102 Tex. 89,
113 S.W. 144 (1908); Dallas County Med. Soc=y v. Ubinas-Brache, 68 S.W.3d 31
(Tex. App.CDallas 2001, pet. denied);  Owens Entm=t Club v. Owens
Cmty. Improvement Club, 466 S.W.2d 70 (Tex. Civ. App.CEastland 1971, no
writ); Schooler v. Tarrant County Med. Soc=y, 457 S.W.2d 644
(Tex. Civ. App.CFort Worth 1970, no writ); Masonic
Grand Chapter of Order of Eastern Star v. Sweatt, 329 S.W.2d 334 (Tex. Civ.
App.CFort Worth 1959,
writ ref=d n.r.e.); Gold
Knob Outdoor Adver. Co. v. Outdoor Adver. Ass=n of Tex., 225 S.W.2d 645
(Tex. Civ. App.CTexarkana 1949, no writ); Evans v.
Southside Place Park Ass=n, Inc., 154 S.W.2d 914
(Tex. Civ. App.CGalveston 1941, writ ref=d w.o.m.); Bhd.
of R.R. Trainmen v. Price, 108 S.W.2d 239 (Tex. Civ. App.CGalveston 1937,
writ dism=d).  








We do not agree that a de novo standard of review applies
because we do not interpret  the doctrine of judicial non-interference to be a
jurisdictional rule.  Courts have not declined to assert jurisdiction over disputes
involving non-profit associations because they lack subject matter
jurisdiction; rather they have declined to exercise jurisdiction more for
various policy reasons such as judicial economy.  See Zechariah Chafee,
Jr., The Internal Affairs of Associations Not For Profit, 43 Harv. L. Rev. 993, 1021B29 (1930)
(discussing policies that affect courts= decisions whether
to exercise jurisdiction over association related disputes).  Typically, the
allegations raised in these suitsCbreach of
contract, negligence,  intentional tortsCfall within a
court=s subject matter
jurisdiction. See, e.g., Donnan, 202 S.W.3d at 223 (claims included
negligence, libel, and slander);  Juarez, 172 S.W.3d at 279 (breach of
contract claim amongst others);  Dallas County Med. Soc=y, 68 S.W.3d at 41
(breach of contract).  The courts choose not to assert jurisdiction for the
policy reasons mentioned above.  

On occasion, courts have made exceptions to the general
rule of non-intervention and chosen to hear a dispute when a property right or
other valuable right is at issue.  See Hatley, 552 F.2d at 655; Owens,
466 S.W.2d at 72.  Thus, in some instances, the policy of autonomy gives way to
a policy of intervention if the harm being done to the plaintiff is great
enough.  Whether the right is valuable enough to warrant protection is within
the trial court=s discretion.  For example, one court has
held that a club member=s right to be a part of the determination
of what the club does with a building it owns is a great enough interest to
justify interference.  See Owens, 466 S.W.2d at 72.  Conversely, another
court has held that suspension of one year from an organization that assigns
sporting officials to referee high school athletics was not a sufficiently
compelling property right to justify judicial intervention.  See Juarez,
172 S.W.3d at 279.  There is no bright line test.  Courts must weigh the
importance of the property or civil right at issue and determine whether it is
great enough to justify deviation from the traditional rule of allowing
associations the greatest possible autonomy.[1] 









Since the determination to be made by the courts is one
involving the weighing of factors, and the exercise of discretion, we believe
an abuse of discretion standard is appropriate.  As a result, our review will
consider whether the trial court abused its discretion.  This standard is
especially appropriate when the trial court must weigh competing policy
considerations and balance interests in determining whether to grant relief, In
re Doe, 19 S.W.3d 249, 253 (Tex. 2000), and it is typically applied to
procedural or other trial management issues.  Id. (citing cases stating
that abuse of discretion is appropriate when reviewing attorney
disqualification, admission of evidence, and imposition of discovery
sanctions).  

C.      No Abuse
of Discretion in Declining to Exercise Jurisdiction

Here,  Stevens has contended that she has been denied a
pecuniary benefit, sufficient to elevate her claim to justiciability. 
Specifically, she complains of her exclusion from the ASDCA=s breeder list,
her exclusion from club advertising, and the denial of an opportunity to vote
on the breed standard.  These alleged pecuniary benefits are the property
rights the court was to weigh against the general policy of non-intervention,
to see whether it would be proper to exercise jurisdiction.  

But Stevens provided no evidence of the pecuniary detriment
caused by the denial of these benefits.  She did not show how much she receives
for one of her Anatolian puppies now, nor did she show how much she would have
charged had she been on the breeder referral list.  She only testified to the
price of Anatolian Shepherd puppies generally, not to any difference in the
price asked if the breeder was or was not on the approved breeder list. 
Stevens also did not attempt to show how much monetary damage was done by
excluding her from club advertising.  And she has not, and almost surely could
not, show damage from not being able to vote on the breed standard.  Given the
dearth of evidence regarding any pecuniary loss, we cannot find that the trial
court abused its discretion in holding that the policy of association autonomy
outweighed the property interest involved in this case.    

Because we find that the trial court did not abuse its
discretion in declining to exercise its jurisdiction, we overrule appellant=s first, second,
and third issues. 

 








II.       No Error
In Denying Motion for New Trial

In her fourth issue, Stevens argues that it was error for
the court to deny her motion for new trial.  According to Stevens=s brief, the trial
judge took a ten-minute break during which she socialized with two defense
witnesses, played with a puppy brought by one of the witnesses, and asked that
same witness for assistance in purchasing a puppy.  Stevens claims that the
trial court should have granted a new trial based on this impropriety.

We review a trial court=s denial of a
motion for new trial for abuse of discretion. Dir., State Employees Workers= Comp. Div. v.
Evans, 889 S.W.2d 266, 268 (Tex. 1994). A trial court abuses its discretion
if it reaches a decision so arbitrary and unreasonable as to amount to a clear
and prejudicial error of law, or if it clearly fails to correctly analyze or
apply the law. In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382
(Tex. 2005).  Here, none of the judge=s alleged behavior
appears in the appellate record.  Therefore, we cannot conclude that the trial
judge abused his discretion when he denied the motion for a new trial.  Stevens=s fourth issue is
overruled.

III.      No Error
In Failing to Award Attorney=s Fees

Stevens argues in her fifth issue that she is entitled to
attorney=s fees under
section 38.001 of the Texas Civil Practice and Remedies Code, either because
she should prevail on her contract claim, or because the court awarded her the
refund of her thirty-dollar membership fee.  Having already decided that the
trial court did not err in refusing to consider her contract issue, we are left
with the issue of whether the refund of Stevens=s membership fee
entitles her to attorney=s fees under 38.001.[2] 









Generally an award or denial of attorney=s fees is reviewed
under an abuse of discretion standard.  See Ridge Oil Co., Inc. v. Guinn
Invs., Inc., 148 S.W.3d 143, 163 (Tex. 2004).  The controlling law in this
instance, section 38.001 of the Texas Civil Practice and Remedies Code,
provides for the recovery of attorney=s fees in addition
to the amount of a Avalid claim@ and costs, if the
claim is a contract claim, among others.  See Tex. Civ. Prac. Rem. Code ' 38.001.  A party
must satisfy two requirements to obtain an award of attorney=s fees: (1) a
party must prevail on a cause of action for which attorney=s fees are
recoverable; (2) the party must recover damages.  Bohatch v. Butler &
Binion, 905 S.W.2d 597, 608 (Tex. App.CHouston [14th
Dist.] 1995), affd, 977 S.W.2d 543 (Tex. 1998).

The claim in this case was for a breach of contract, in
satisfaction of which Stevens  sought specific performance, declaring her a
member of the ASDCA, and exemplary damages.  The trial court properly decided
that it would not consider the contract claim.  Therefore, it cannot be held
that she prevailed on her cause of action.  The thirty dollars awarded to her
was relief she had not requested, and it appears to have been aimed at avoiding
unjust enrichment, a separate basis of civil liability, wholly independent of
tort or contract.  James M. Fischer,
Understanding Remedies ' 50 (Matthew Bender & Co. 1999); see
also Douglas Laycock, The Scope and Significance of Restitution, 67 Tex. L. Rev. 1277, 1277 (1989). 
Therefore, the award of thirty dollars was not related to her breach of
contract claim, and does not trigger the award of attorney=s fees under
section 38.001 of the Texas Civil Practice and Remedies Code.  We overrule
appellant=s fifth issue. 

Conclusion

Having
overruled all of appellant=s issues, we affirm the judgment of the
trial court.

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment rendered
and Opinion filed June 5, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman. 









[1]  As mentioned above, Texas courts have also required
something similar to due process on the part of voluntary associations, and
will, at times, intervene on that basis as well.  Hatley, 552 F.2d at
655; see Sweatt, 329 S.W.2d at 337; Price, 108 S.W.2d at 241.  In
such an instance, courts similarly weigh the degree of deprivation of process
against the policy in favor of association autonomy.





[2]  Because neither party complains that the trial court
erred in ordering a refund of the $30, we need not consider whether the trial
court abused its discretion in ordering a refund.